**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMSC-037**

**Filing Date:  August 22, 2011**

**Docket No. 32,486**

**CITY OF RIO RANCHO,**

       **Plaintiff-Respondent,**

**v.**

**AMREP SOUTHWEST INC.,**

       **Defendant-Petitioner.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Louis P. McDonald, District Judge**

Lastrapes, Spangler & Pacheco, P.A.
Matthew M. Spangler
Jenica J. Jacobi
Rio Rancho, NM

for Petitioner

Montgomery & Andrews, P.A.
Randy S. Bartell
Sharon T. Shaheen
Santa Fe, NM

for Respondent

**CONSOLIDATED WITH:**

**Docket No. 32,489**

**CITY OF RIO RANCHO**,

       **Plaintiff-Respondent and Cross-Petitioner,**

**v.**

1

**CLOUDVIEW ESTATES, LLC,**

**Defendant-Petitioner and Cross-Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Louis P. McDonald, District Judge**

Foster, Rieder & Jackson, P.C.
J. Douglas Foster
Travis G. Jackson
Albuquerque, NM

for Petitioner and Cross-Respondent

Montgomery & Andrews, P.A.
Randy S. Bartell
Sharon T. Shaheen
Santa Fe, NM

for Respondent and Cross-Petitioner

Dave Thomas & Associates, P.C.
David H. Thomas III
Albuquerque, NM

R. S. Radford
Sacramento, CA

for Amicus Curiae
Pacific Legal Foundation

## OPINION

**CHÁVEZ, Justice.**

{1}      In 1985, at the behest of the City of Rio Rancho, Amrep Southwest Inc. recorded a plat for the Vista Hills West Unit 1 (VHWU1) subdivision, granting the City a drainage easement over ten acres identified as Parcel F.  In 2004, Amrep sold Parcel F to the Mares group in fee simple, subject to the drainage easement.  Mares in turn sold it to Cloudview Estates in fee simple, subject to the same recorded drainage easement.  Cloudview asked the City to vacate the drainage easement and subdivide the parcel into thirty lots.  The City declined because it found that the City and Amrep had originally intended to perpetually dedicate Parcel F as open space.

**{2}**     Even if the City and Amrep intended Parcel F to be open space, what effect does the recorded plat designating Parcel F as a drainage easement have on Cloudview's subsequent purchase of Parcel F? Cloudview contends that the recorded plat controls because it was not aware of any unrecorded interests the City had in Parcel F, making Cloudview a good faith purchaser whose ownership is subject only to the City's drainage easement. In addition, Cloudview contends that the City's decision not to vacate the easement and approve Cloudview's subdivision plan was arbitrary and contrary to law, ultimately entitling Cloudview to reasonable compensation because the City deprived Cloudview of any economically beneficial use of the land.

**{3}**     The City responds that Cloudview is not a good faith purchaser because (1) the drainage easement over the entirety of the ten-acre parcel grants fee title to the City because such an easement is a dedication of land for public use under NMSA 1978, Section 3-20-11 (1973); (2) the City has fee title by adverse possession because the City openly possessed the land and had color of title by virtue of the plat; and (3) a drainage easement on the entirety of a ten-acre parcel is the type of ambiguity that should have put Cloudview on notice that it had to diligently investigate whether the City had a claim to title to the land greater than a drainage easement. Finally, the City seeks equitable relief against Amrep for having sold Parcel F in fee simple, despite Amrep's promises to the City and VHWU1 lot purchasers that Parcel F would remain open space in perpetuity.

**{4}**     We conclude that Cloudview is a good faith purchaser whose fee-title ownership interest is subject only to the City's drainage easement for three reasons. First, the plat does not specifically designate Parcel F for public use, and therefore fee title was not conveyed to the City under Section 3-20-11. Second, the City does not have color of title for purposes of adverse possession because the grant of an easement is not the equivalent of granting fee title. Third, the *recorded* plat unambiguously grants to the City an easement for the specific purpose of drainage, thereby extinguishing any unrecorded interests and relieving Cloudview, which was a subsequent purchaser without knowledge of the unrecorded interests, from its duty to diligently investigate whether the City had other adverse claims to the property title.

**{5}**     We also agree that the City's decision declining to vacate the drainage easement was arbitrary and contrary to law because the City relied on an unrecorded open space easement in declining Cloudview's application. However, because we remand to the City to reconsider Cloudview's application to subdivide Parcel F and vacate the drainage easement, we conclude that Cloudview's inverse condemnation claim is premature.

**{6}**     Finally, we hold that genuine issues of material fact exist with respect to the City's unjust enrichment claim against Amrep, making summary judgment on that count inappropriate.

**I.     PROCEDURAL BACKGROUND**

3

**{7}** After purchasing Parcel F, Cloudview submitted a preliminary plat to the City's Planning and Zoning Board, seeking to subdivide the parcel into thirty lots. The Planning and Zoning Board approved the plat and subdivision. However, after receiving citizen objections, the City Council remanded the approval back to the Planning and Zoning Board for its reconsideration. Cloudview filed another application with the Planning and Zoning Board that included a request for the City to vacate the drainage easement on Parcel F. This time the Planning and Zoning Board did not grant the application because it concluded that the drainage easement implicitly granted the City the right to use Parcel F as open space. The City's Governing Body affirmed the Planning and Zoning Board, adopting verbatim the Planning and Zoning Board's decision and declining to vacate the easement. The Governing Body stated that "the protection of Parcel F as open space provides a valued public use originally made a condition of the development of [VHWU1] that should be continued."

**{8}** Cloudview timely sued the City in federal district court, alleging due process and equal protection violations and seeking judicial review of the City's decision to decline to vacate the easement. On October 6, 2006, the federal district court dismissed the complaint without prejudice, concluding that the case was not ripe for decision.

**{9}** Four days before the dismissal, on October 2, 2006, the City sued Amrep and Cloudview in state district court. The City sought to quiet title to Parcel F, contending that fee title to Parcel F was vested in the City. In the alternative, the City sought a declaratory judgment that the City owns a permanent open space easement over the entirety of Parcel F that cannot be vacated and with which no form of development is compatible. The City also sought equitable relief to prevent the unjust enrichment of Amrep and Cloudview that would arise from the development of Parcel F, despite Amrep's promises to the City that Parcel F would be maintained as open space. Cloudview filed a counterclaim seeking reversal of the City's decision not to vacate the drainage easement and for reasonable compensation, alleging in a claim of inverse condemnation that the City's decision deprived Cloudview of any economically beneficial use of Parcel F.

**{10}** Amrep and Cloudview subsequently filed motions for summary judgment on the City's quiet title claim and the City's request for a declaration that it had a perpetual open space easement. The district court found that the City's only property interest in Parcel F was a drainage easement and that Cloudview was a good faith purchaser for value of Parcel F without knowledge or constructive notice of any adverse interest of the City that is greater than the City's drainage easement. The district court therefore granted partial summary judgment to Amrep and Cloudview, dismissing with prejudice the City's quiet title and declaratory judgment claims.

**{11}** The district court also granted Cloudview's motions for partial summary judgment on Cloudview's counterclaims. The district court reversed the City's administrative decision not to vacate the drainage easement as "contrary to law and not supported by substantial evidence." The district court granted summary judgment to Cloudview on its inverse condemnation claim based on the City's refusal to vacate a portion of the easement.

4

**{12}** On appeal from the district court, the Court of Appeals reversed summary judgment on the City's quiet title and declaratory judgment claims, concluding that the district court erred by relying solely on the recorded final plat and refusing to consider extrinsic evidence of "what the City and Amrep actually intended by the designation of a drainage easement over the entirety of Parcel F." *City of Rio Rancho v. Amrep Sw., Inc.*, 2010-NMCA-075, ¶¶ 1-2, 15, 148 N.M. 542, 238 P.3d 911. The Court of Appeals also reversed the district court's grant of summary judgment in favor of Cloudview on its counterclaims, concluding that the City's decision was in accordance with the law and supported by substantial evidence. *City of Rio Rancho v. Cloudview Estates, LLC*, No. 29,510, slip op. at 5 (N.M. Ct. App. June 11, 2010). With respect to the inverse condemnation claim, the Court of Appeals found that there are genuine issues of material fact regarding the nature and extent of the easement over Parcel F. *Id.* at 19-20. The Court of Appeals explained that "Cloudview purchased the property as a good faith purchaser for value without notice but subject to the easement over the entirety of Parcel F." *Id.* at 19.

**{13}** Amrep and Cloudview petitioned this Court for certiorari, and the City filed a conditional cross-petition challenging Cloudview's good faith purchaser status and the timeliness of Cloudview's request for judicial review of the City's administrative decision. We granted each party's petition for writ of certiorari and affirm the Court of Appeals in part and reverse in part.

## II.   DISCUSSION

### A.   Cloudview Is a Good Faith Purchaser of Parcel F and Owns Parcel F Subject to the City's Recorded Drainage Easement.

#### 1.   Summary Judgment Standard of Review

**{14}** In *Romero v. Philip Morris Inc.* (*Philip Morris*), 2010-NMSC-035, 148 N.M. 713, 242 P.3d 280, we repeated the following standards regarding appeals of summary judgments. Our review of summary judgment on appeal is de novo. *Id.* ¶ 7. Summary judgment will be affirmed if we conclude that "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). We "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Id.* (internal quotation marks and citation omitted). The party moving for summary judgment has the "initial burden of establishing a prima facie case for summary judgment" by presenting "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* ¶ 10 (internal quotation marks and citation omitted). Once the moving party has met this burden, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citations omitted). To determine which facts are material, a court's focus should be on whether, under the pertinent substantive law, "the fact is necessary to give rise to a claim." *Id.* ¶ 11 (internal quotation marks and citation omitted).

## 2. Fee Title to Parcel F Did Not Vest in the City.

{15}    The City contends that evidence before the district court created genuine issues of material fact precluding summary judgment because such evidence supports a reasonable inference that the City acquired fee title to Parcel F by either statutory dedication or adverse possession. The evidence before the district court was that in 1985, Amrep submitted to the City a preliminary plat for the proposed VHWU1 subdivision. The VHWU1 preliminary plat is part of the record on appeal, but it contains no markings to indicate that it was ever recorded in Sandoval County. The preliminary plat describes Parcel F as land that "WILL BE OPEN SPACE."

{16}    In contrast, the final plat for the VHWU1 subdivision, which was recorded in the public property records of Sandoval County on October 18, 1985, labels Parcel F with the abbreviation "D.E.," which, according to the plat, stands for "Drainage Easement." The recorded final plat also states that "the Owners of the Property do hereby dedicate all public thoroughfares which are shown hereon to the City of Rio Rancho, New Mexico, and do hereby grant easements shown on the plat." The VHWU1 recorded plat was approved by the City's Planning and Zoning Commission and endorsed by Amrep.

{17}    The record on appeal reflects the City's consistent admission that it instructed Amrep to apply the drainage easement designation to Parcel F on the VHWU1 recorded plat. The City maintains, however, that "drainage easement" was used as a surrogate term for "open space," and that it relied on Amrep's representations that Amrep would nonetheless set Parcel F "aside as open space in perpetuity when the City approved the plat." Thus, argues the City, having acquired fee title by virtue of dedication or adverse possession prior to Amrep's sale of Parcel F, Amrep had no interest in Parcel F to convey, thus depriving Cloudview of good faith purchaser status.

### a. Statutory Dedication Under Section 3-20-11

{18}    Because the City relies on Section 3-20-11 for its argument that fee title to Parcel F vested in the City before Amrep sold Parcel F, we will rely on this section to determine which facts are material for purposes of summary judgment. Under Section 3-20-11, a municipality automatically acquires fee title to land within its territory once a plat that designates the land "for public use" is endorsed and filed. The City contends that the drainage easement designated on the final recorded plat constitutes a dedication for public use under Section 3-20-11. We disagree. "Although drainage undoubtedly can be a public use of property, . . . [m]erely because land can be dedicated to public use[] does not mean it has been." *Smith v. Beesley*, 247 P.3d 548, 556 (Ariz. Ct. App. 2011) (finding that drainage easements designated solely for the purpose of drainage on subdivision plat were not for public use); *see State ex rel. State Highway Comm'n v. Briggs*, 73 N.M. 170, 172, 386 P.2d 258, 259-60 (1963) ("The plat . . . as filed and received into evidence certainly did not designate the parking area as an area set aside for public use as required by the statute. It merely designates the area involved as a 'parking area.'"). Where a subdivision plat does

6

not clearly designate land as set aside for public use, we cannot find the land to have been dedicated under Section 3-20-11.

{19}  The practical effect of allowing the City to prevail on this claim would be the transformation of a lesser, nonpossessory property interest—an easement—into a greater, possessory interest—fee title—without an indication on the recorded plat of the parties' intent to do so.  Section 3-20-11 only operates to vest fee title to a specific property in a municipality where a plat expressly dedicates the property "for public use."  Although the preliminary plat submitted by Amrep did identify Parcel F as land that will be open space, that preliminary plat was not recorded as required by NMSA 1978, Section 14-9-1 (1991).  Moreover, the only "dedication" in the recorded plat was of the public thoroughfares.  The language in the plat abundantly clarifies the grant of a drainage easement for Parcel F, not a more general open space easement.  Had the City wanted Parcel F to be dedicated for public use, it could have insisted that Parcel F be dedicated "for public use" as open space.  It did not.

{20}  There is no genuine issue of material fact concerning whether the VHWU1 recorded plat designates Parcel F "for public use."  The plat designates Parcel F as a drainage easement and nothing more.  Because the VHWU1 recorded plat did not meet this statutory requirement, the City's claim for acquisition of fee title by operation of Section 3-20-11 fails as a matter of law.  The district court's grant of summary judgment against the City on this claim was appropriate.

### b.     Adverse Possession

{21}  The City also claims that it has fee title to Parcel F under adverse possession.  Adverse possession is defined as "an actual and visible appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another."  NMSA 1978, § 37-1-22 (1973).  "A party claiming ownership of land by adverse possession must prove by clear and convincing evidence continuous adverse possession for ten years under color of title, in good faith, and payment of taxes on the property during these years."  *Williams v. Howell*, 108 N.M. 225, 227, 770 P.2d 870, 872 (1989).  "If any one of the elements necessary to establish title to land by adverse possession is missing, the claimant will not obtain title."  *Hernandez v. Cabrera*, 107 N.M. 435, 436, 759 P.2d 1017, 1018 (Ct. App. 1988).

{22}  The City relies on the VHWU1 recorded plat for color of title.  "To possess color of title, the claimant must have a writing or a conveyance of some kind that purports to convey the land title to which is claimed."  *Madrid v. Rodriguez* (*In re Estate of Duran*), 2003-NMSC-008, ¶ 20, 133 N.M. 553, 66 P.3d 326 (internal quotation marks and citation omitted); *see Slemmons v. Massie*, 102 N.M. 33, 34, 690 P.2d 1027, 1028 (1984) ("[Color of title] must attempt to give title to the adverse occupant, but for some reason fails to do so.").

7

**{23}** The VHWU1 recorded plat grants a drainage easement to the City over the entirety of Parcel F. Is the grant of this drainage easement a writing or conveyance that purports to convey fee title to the City? The answer is no; "an easement is distinguished from a fee, and constitutes a liberty, privilege, right, or advantage which one has in the land of another . . . measured by the nature and purpose of the easement." *Kennedy v. Bond*, 80 N.M. 734, 736-37, 460 P.2d 809, 811-12 (1969) (internal quotation marks and citation omitted). We conclude that the City has failed to create a genuine issue of material fact on the essential element of color of title because the VHWU1 recorded plat does not purport to grant fee title to the City. We hold that this claim fails as a matter of law and uphold the district court's grant of summary judgment as to the City's adverse possession claim.

### 3. Cloudview Bought Parcel F Without Notice of the City's Claimed Open Space Easement.

**{24}** The City next argues that even if the City does not hold fee title to Parcel F, Cloudview is not a good faith purchaser without notice of the City's claim to an open space easement. In district court, the City sought a declaratory judgment that the drainage easement designated on the final recorded plat actually granted the City a permanent open space easement over the entirety of Parcel F that cannot be vacated because the City and Amrep intended to create open space as part of the VHWU1 subdivision approval process. In the alternative, the City sought a declaratory judgment that Amrep impliedly dedicated Parcel F to the City when Amrep represented that Parcel F would be maintained as open space in perpetuity. *See Santa Fe Cnty. Bd. of Cnty. Comm'rs v. Town of Edgewood*, 2004-NMCA-111, ¶ 13, 136 N.M. 301, 97 P.3d 633 (explaining that the public obtains an easement if "a landowner offers to dedicate certain property for public use and the offer is accepted").

**{25}** The City does not assert that Cloudview had actual knowledge of the City's alleged open space easement. Instead the City argues that Cloudview was on "inquiry notice" of the City's claim to an open space easement. Therefore, argues the City, because "Cloudview had knowledge of facts that would have led a prudent person to investigate the history and reasons for designating a drainage easement over the entirety of Parcel F," Cloudview should be charged with knowledge of all facts that a reasonably diligent investigation would have revealed. The City contends that such an investigation would have revealed to Cloudview that Amrep and the City intended Parcel F to be open space in perpetuity.

**{26}** A good faith purchaser of real property who has invested money in the property without notice of a third party's unrecorded interest in that property is protected under New Mexico law. *See* NMSA 1978, § 14-9-3 (1990); *Angle v. Slayton*, 102 N.M. 521, 523, 697 P.2d 940, 942 (1985). The general rule is that a prospective purchaser of real property is deemed to have notice of adverse claims to that property if the purchaser has "[k]nowledge of such facts as ought to put a prudent [person] upon inquiry as to the title." *Hunt v. Ellis*, 27 N.M. 397, 401, 201 P. 1064, 1065 (1921) (internal quotation marks and citation omitted). Once a prospective purchaser obtains knowledge of facts that trigger a duty to inquire about

the title, that purchaser must perform a "reasonably diligent investigation"—one that "would lead to the knowledge of the requisite facts by the exercise of ordinary diligence and understanding." *Id.* (internal quotation marks and citation omitted). In such cases, the prospective purchaser is charged with knowledge of all facts that "a reasonably diligent investigation would have ascertained." *Id.* (internal quotation marks and citation omitted). In applying the inquiry notice rule, "each case must be governed by its own peculiar circumstances." *Id.* (internal quotation marks and citation omitted). "A person cannot be a [good faith] purchaser" if that person is aware of facts that "should have put him [or her] to an inquiry, which if pursued with due diligence, would have led to a knowledge of the infirmities appearing upon the face of the instrument involved in the transaction." *Dunne v. Petterman*, 52 N.M. 284, 287-88, 197 P.2d 618, 620 (1948).

**{27}** The City presents two distinct theories to support its claim that Cloudview had a duty to inquire: (1) that the City was in "open possession" of Parcel F when Cloudview made its purchase, and (2) that before purchasing Parcel F, Cloudview knew of an "inherent ambiguity" in the VHWU1 recorded plat. We analyze each theory in turn.

### a. The City Failed to Present Evidence upon Which Reasonable Minds Could Differ as to the City's Open Possession of Parcel F.

**{28}** The City argues that Cloudview had a duty to inquire about the nature and scope of the drainage easement on Parcel F because Cloudview's agent, Mr. Garcia, knew that the City had an easement over Parcel F, and Parcel F had remained open space despite having been surrounded by development for more than twenty years. In light of these facts, the City contends that Cloudview had a duty to investigate why the City was in open possession of Parcel F when Cloudview purchased the property. Cloudview argues that the City was not in open possession, citing *Teofan v. Cools* (*In re Spring Creek Invs. of Dallas, N.V., Inc.*), 71 B.R. 157, 159 (Bankr. N.D. Tex. 1987) ("possession, to act as . . . notice of adverse ownership, must be visible, open, notorious, and exclusive, and not merely constructive possession.").

**{29}** Possession of land by one other than the owner of record can be sufficient to trigger a purchaser's duty to inquire further. *See Hunt*, 27 N.M. at 402, 201 P. at 1066 ("A person who purchases an estate in the possession of" someone other than the seller is "bound to inquire of such possessor what right [the possessor] has in the estate." (internal quotation marks and citation omitted)). "What acts may or may not constitute a possession are necessarily varied and depend to some extent upon the nature, locality, and use to which the property may be applied, the situation of the parties, and a variety of circumstances which have necessarily to be taken into consideration." *Id.* at 401-02, 201 P. at 1065 (internal quotation marks and citation omitted).

**{30}** However, open possession of property creates no duty to investigate where all signs of possession can be attributed to and are consistent with ownership by the owner of record. *See id.* at 403, 201 P. at 1066 (holding that a subsequent purchaser did not have constructive

notice of a third party's claimed interest because the third party's land use was not noticeably different than the use made prior to the third party's alleged acquisition); *see also Teofan*, 71 B.R. at 159 ("Possession that could easily be referred to the person in whom stood the record title is not sufficient."). Where open possession can be attributed to the owner of record, "[a]n investigator may certainly rely upon the truth of the recitals of a record, where they are specific." *Smith & Ricker v. Hill Bros.*, 17 N.M. 415, 431, 134 P. 243, 247 (1913); *see also Allison v. Curtis*, 62 N.M. 387, 390, 310 P.2d 1042, 1044 (1957) (holding that innocent purchasers for value were entitled to rely on the property records).

**{31}**   Is the fact that Parcel F is undeveloped and surrounded by subdivided parcels inconsistent with ownership by Amrep? No. The lack of development on Parcel F, even when viewed in contrast to the surrounding development, fails to raise a reasonable inference that anyone other than Amrep, and subsequently the Mares group, made the decision to leave the parcel undeveloped, and it certainly does not constitute open possession by anyone other than the owner of record. Accordingly, we conclude that the City failed to present evidence upon which reasonable minds would differ as to the City's open possession of Parcel F.

> **b.    Cloudview Had No Duty to Investigate the Nature or Scope of the Easement over Parcel F Because the Recorded Plat Unambiguously Granted a Drainage Easement to the City.**

**{32}**   The City also argues that Cloudview owed a duty to inquire further because  Mr. Garcia "readily admits that prior to purchase he was aware of the inherent ambiguity in the Final Plat." More specifically, the City contends that there is an inherent ambiguity in the language granting the drainage easement because (1) the recorded drainage easement covered the entirety of Parcel F; (2) the topography of Parcel F precluded its use as a drainage easement; (3) the easement had to be vacated before the City would permit the subdivision to proceed; (4) Cloudview's inquiry with the City resulted in an indefinite answer because the City employees with whom Cloudview spoke did not know the history of Parcel F's designation as a drainage easement; and (5) the City would require Cloudview to cite all previous drainage studies and reports in its new drainage report for the area.

**{33}**   The VHWU1 recorded plat expressly grants the City a drainage easement over Parcel F. "An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." Restatement (Third) of Prop.: Servitudes § 1.2(1), at 12 (2000). The easement holder's right to use the property is limited to the particular purpose for which the easement was created. *See* Restatement (Third) of Prop.: Servitudes § 1.2 cmt. d, at 15 ("The holder of the easement . . . is entitled to make only the uses reasonably necessary for the specified purpose."). The owner of the fee title retains the right to make "any reasonable use desired of the land in which the easement exists," as long as that use is consistent with the rights of the easement holder. *Kennedy*, 80 N.M. at 736-37, 460 P.2d at 811-12 (internal quotation marks and citation omitted).

For example, the transferor of an easement for an underground pipeline retains the right to enter and make any use of the area covered by the easement that is not specifically prohibited by the easement and that does not unreasonably interfere with use of the easement for pipeline purposes. The holder of the easement may only use the area for purposes reasonably related to the pipeline.

Restatement (Third) of Prop.: Servitudes § 1.2 cmt. d, at 15.

{34} The purpose of the City's easement, according to the unambiguous language on the VHWU1 recorded plat, is drainage. "The ordinary connotation of the word 'drainage' means the carrying away of water and other liquids either in closed or open conduits." *Peterson v. Barron*, 401 S.W.2d 680, 686 (Tex. Civ. App. 1966). Cloudview and other subsequent purchasers are entitled to rely upon the recorded plat's specific recital of the City's right to use Parcel F only for drainage purposes. *See Smith & Ricker*, 17 N.M. at 431, 134 P. at 247 (Cloudview "may certainly rely upon the truth of the recitals of a record, where they are specific"). The City, which admits that it instructed Amrep to use "drainage easement" as a surrogate term for "open space" on the recorded plat, cannot now rely upon a theory of ambiguity arising from that written instrument, unambiguous on its face, to defeat Cloudview's claim for protection as a good faith purchaser for value without notice. We hold as a matter of law that the designation of a drainage easement over Parcel F did not give rise to a duty for Cloudview to investigate the nature or extent of the easement.

      c.      **The District Court Properly Excluded Extrinsic Evidence of Amrep's and the City's Intent Because Cloudview's Good Faith Purchaser Status Extinguished the City's Claimed but Unrecorded Interests.**

{35} As the Court of Appeals correctly noted, "'[a]n easement should be construed according to the intent of the parties.'" *Cloudview*, No. 29,510, slip op. at 19 (quoting *Olson v. H & B Props., Inc.*, 118 N.M. 495, 498, 882 P.2d 536, 539 (1994)); *see* Restatement (Third) of Prop.: Servitudes § 4.1(1), at 496-97 ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.").

{36} Based on these general principles, the Court of Appeals relied upon contract law to conclude that the district court erred when it "failed to consider all of the extrinsic evidence presented by the City to show that the Plat was ambiguous as to the true intent of the parties regarding the designation and future use of Parcel F." *Amrep*, 2010-NMCA-075, ¶ 11; *see Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (holding that the district court should have allowed the parties to submit extrinsic evidence to show that the meaning of a contract was unclear); *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508-09, 817 P.2d 238, 242-43 (1991) ("[I]n determining whether a term or expression

11

to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." (footnote omitted)). The City argues that this rule of contract interpretation should be applied to plats as well as contracts. *See Wilson v. Owen*, 261 S.W.2d 19, 23 (Mo. 1953) (explaining that where the meaning of writing on a plat is in doubt, the court can look to extrinsic evidence to determine the parties' intent).

{37} However, the legal treatment of language in a recorded plat is different than the legal treatment of language in a contract. An easement described in a recorded instrument must be in writing and duly recorded in the office of the county clerk of the county where the easement is situated. Section 14-9-1. More importantly, when interpreting the nature and extent of an easement, we place "heavy emphasis . . . on the written expressions of the parties' intent." Restatement (Third) of Prop.: Servitudes § 4.1 cmt. d, at 499. Easements "are intended to bind successors to interests in the land, as well as the contracting parties, and are generally intended to last for an indefinite period of time." *Id.* The recorded instrument "is often the primary source of information available to a prospective purchaser of the land." *Id.* Therefore, the language in a granting instrument "should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it in the context of the parcels of land involved." *Id.* Consideration of extrinsic evidence that may illuminate "a particular meaning adopted by the creating parties is generally inappropriate because the creating parties intended to bind and benefit successors for whom the written record will provide the primary evidence of the [easement]'s meaning." *Id.* at 499-500. "An easement should be construed according to its express and specific terms as a manifestation of the intent of the parties." *Sanders v. Lutz*, 109 N.M. 193, 194, 784 P.2d 12, 13 (1989). But "[w]hen the express terms of an easement are ambiguous, the intent of the parties should be determined from the language of the granting instrument in conjunction with the surrounding circumstances." *Olson*, 118 N.M. at 498, 882 P.2d at 539.

{38} To allow extrinsic evidence to establish an ambiguity in the meaning of language in a plat, when the language itself is unambiguous, would frustrate the purpose of our law that governs the recording of instruments affecting real estate. To ensure that subsequent purchasers of property have notice of prior claims of interest, New Mexico law provides that all "writings affecting the title to real estate shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated." Section 14-9-1. The inevitable consequence of this requirement is the constructive knowledge that flows from it because "[s]uch records shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording." NMSA 1953, § 14-9-2 (1886-87).

{39} The purpose for requiring the recording of instruments affecting real estate in the county where the property is situated is to provide "a place and a method by which an intending purchaser . . . can safely determine just what kind of title [the purchaser] is in fact obtaining." *Romero v. Sanchez*, 83 N.M. 358, 361, 492 P.2d 140, 143 (1971) (internal quotation marks and citation omitted). The recording requirement seeks "to protect [good

faith] purchasers against loss" from adverse claims of interest that are "not disclosed by any public record" and "not ascertainable by due diligence." *Id.* (internal quotation marks and citation omitted); *see also Arias v. Springer*, 42 N.M. 350, 359, 78 P.2d 153, 159 (1938) ("The object of the statute is to prevent injustice by protecting those who, without knowledge of infirmities in the title, invest money in property or mortgage loans; and those who have acquired judgment liens without such knowledge.").

{40}     Thus, Section 14-9-3 provides that unrecorded instruments asserting interests in real estate shall not affect the title or rights of purchasers to real estate if the purchaser did not have knowledge of the existence of such unrecorded instruments. *See Jeffers v. Doel*, 99 N.M. 351, 353, 658 P.2d 426, 428 (1982) (explaining that the statute protects "innocent purchasers for value without notice of unrecorded instruments" (internal quotation marks and citation omitted)).

{41}     Municipalities are not exempt from the recording requirements. Municipalities are "entitled to have instruments affecting real estate [conveyed] to them . . . to be duly recorded in . . . the various counties in which the real estate is situated." NMSA 1978, § 14-9-7(A) (1987). When a municipality records an instrument affecting real estate, that instrument "shall have the full legal effect of recording and be legal notice of the rights of the public entities [to the] interests conveyed or granted." Section 14-9-7(B).

{42}     The final recorded plat is what governs in this case, and the recorded plat unambiguously grants a drainage easement to the City. Because the drainage easement is unambiguous, Cloudview did not have a duty to investigate any additional adverse claims the City might have had to the title of Parcel F. Even if the City and Amrep intended "drainage easement" to mean "open space," their intent is now irrelevant in light of Cloudview's good faith purchaser status. When a good faith purchaser takes real property without notice of an unrecorded easement, the unrecorded easement is extinguished under Section 14-9-3. *See* Restatement (Third) of Prop.: Servitudes § 7.14 cmt. a, at 440 ("The basic rule is that all unrecorded servitude benefits, regardless of the manner of their creation, are subject to extinguishment under the recording act."). We agree with the Restatement that the "benefits produced by subjecting [easements] to extinguishment under the recording act will outweigh the social costs" because prospective purchasers will be able to rely on the property records. *Id.*

{43}     Cloudview is a good faith purchaser who took Parcel F subject only to the City's recorded drainage easement. *See* § 14-9-2 (charging subsequent purchasers with constructive notice of all recorded documents within the purchaser's chain of title). We hold that each of the City's claimed but unrecorded interests in Parcel F have been extinguished by Cloudview's good faith purchaser status. Further, under the circumstances of this case, neither the scope nor the purpose of the easement may vary from drainage as expressed on the VHWU1 recorded plat.

**B.     The City's Administrative Decision Was Arbitrary and Contrary to Law.**

13

**{44}**     As a threshold matter, the City contends that Cloudview failed to appeal the City's administrative decision within the applicable limitation period because Cloudview failed to file a complaint in state district court within two days of when the federal court dismissed Cloudview's complaint without prejudice.  A person aggrieved by a decision of a zoning authority has thirty days to appeal to the district court.  *See* NMSA 1978, § 3-21-9 (1999) ("A person aggrieved by a decision of the zoning authority . . . may appeal the decision pursuant to the provisions of Section 39-3-1.1 NMSA 1978."); NMSA 1978, § 39-3-1.1(C) (1999) ("[A] person aggrieved by a final [administrative] decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision.").

**{45}**     In this case, the City's Governing Body issued its final decision on November 10, 2005.  Cloudview sought review in federal district court on December 8, 2005, twenty-eight days later.  *See Cloudview Estates, LLC v. City of Rio Rancho*, Civ. No. 05-01283 MV/WPL (D.N.M. Dec. 8, 2005).  The filing of the federal action tolled the limitations period.  *See Gathman-Matotan Architects & Planners, Inc. v. State, Dep't of Fin. & Admin., Prop. Control Div.*, 109 N.M. 492, 495, 787 P.2d 411, 414 (1990) ("[T]he filing of a complaint ordinarily tolls the applicable limitations period.  In this respect, New Mexico has adopted an 'equitable' or nonstatutory tolling principle alongside the statutory tolling provisions in NMSA 1978, Sections 37-1-14, 37-1-9 and 37-1-12."); *see also Bracken v. Yates Petroleum Corp.*, 107 N.M. 463, 465, 760 P.2d 155, 157 (1988) ("When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin [the] case and thereby toll whatever statutes of limitation would otherwise apply.  The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure." (internal quotation marks and citation omitted)), *disagreed with on other grounds*, *Team Bank v. Meridian Oil Inc.*, 118 N.M. 147, 151, 879 P.2d 779, 783 (1994).

**{46}**     While Cloudview's federal action was still pending, the City initiated its suit in state district court.  Cloudview had thirty days to file its answer to the complaint and any counterclaims it had against the City.  Rules 1-012(A), 1-013 NMRA.  Once the federal action was dismissed, Cloudview counterclaimed in state district court for review of the City's administrative decision.  A counterclaim is not barred by a statute of limitations if it was not barred at the time the complaint was filed.  *See, e.g.*, NMSA 1953, § 37-1-15 (1880); *see generally* M.A.L., Annotation, *Commencement of Action as Suspending Running of Limitation Against Claim Which Is Subject of Setoff, Counterclaim, or Recoupment*, 127 A.L.R. 909, 910 (1940) ("The rule which is supported by the majority of the cases is that unless otherwise provided by statute, if a counterclaim or setoff is not barred at the commencement of the action in which it is pleaded, it does not become so afterward during the pendency of that action.").  Additionally, Cloudview's counterclaim was compulsory; as such, Cloudview could not have raised it separately as it would have been barred by res judicata.  *See* Rule 1-013(A) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."); *see also City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 18, 134 N.M. 216, 75 P.3d 816

14

("Res judicata bars not only claims that were raised in the prior proceeding, but also claims that could have been raised."). We conclude that Cloudview's appeal for review in the state district court was timely.

**{47}**     Having found that the state district court properly reviewed the City's administrative decision, "we will conduct the same review of an administrative order as the district court sitting in its appellate capacity, while at the same time determining whether the district court erred in the first appeal." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. The district court may set aside, reverse, or remand final administrative orders if it finds that "(1) the agency acted fraudulently, arbitrarily or capriciously; (2) the decision was not supported by substantial evidence; or (3) the agency did not act in accordance with law." Section 39-3-1.1(D). "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande*, 2003-NMSC-005, ¶ 17.

**{48}**     In this case, the City declined to vacate the drainage easement in part because the "protection of Parcel F as open space provides a valued public use originally made a condition of the development of [VHWU1] that should be continued." Because the City owns only a drainage easement over Parcel F, we conclude that the City's decision to enforce an unrecorded open space easement against the rights of a subsequent good faith purchaser was arbitrary and contrary to law. However, we do not know how the City would have decided Cloudview's application if it had not interposed a perpetual open space easement as a reason not to grant Cloudview's application. Therefore, we vacate the City's administrative decision and remand to the City's Governing Body for further proceedings consistent with this Opinion.

## C.     Cloudview's Claim for Inverse Condemnation Is Not Ripe for Consideration.

**{49}**     Cloudview argues that the City's decision to retain Parcel F for public use as open space was in effect a taking of its property. *See* NMSA 1978, § 42A-1-29(A) (1983) ("A person authorized to exercise the right of eminent domain who has taken . . . any property for public use without making just compensation . . . is liable to the condemnee, or any subsequent grantee thereof, for the value thereof."). Specifically, Cloudview argues that the City deprived Cloudview of any economically beneficial use of its property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992) ("[W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave [the] property economically idle, [the owner] has suffered a taking.").

**{50}**     Because the City's administrative decision has been vacated and remanded, Cloudview's inverse condemnation claim is not yet ripe for our consideration. We reverse the district court's grant of summary judgment in favor of Cloudview on this claim and remand the claim to the district court where it shall be stayed pending the outcome of the City's administrative decision.

**D.** **Genuine Issues of Material Fact Exist with Respect to the City's Claim for Damages Against Amrep for Unjust Enrichment.**

**{51}** The City also seeks equitable relief in the form of a constructive trust to prevent Amrep's and Cloudview's unjust enrichment. The City argues that "Amrep should be held accountable for selling Parcel F to a third party for residential development after promising the City, as well as VHWU1 lot purchasers, that Parcel F would remain open space in perpetuity." *See Knight v. City of Albuquerque*, 110 N.M. 265, 266, 794 P.2d 739, 740 (Ct. App. 1990) ("[A] developer will not be allowed to induce purchasers to buy property by purporting to include open space such as parks or golf courses in a subdivision plat, only to subsequently change the uses of those open space areas.").

**{52}** Wrongful conduct, such as fraud, may in some instances "warrant the imposition of a constructive trust." *Gushwa v. Hunt* (*In re Estate of Gushwa*), 2008-NMSC-064, ¶ 34, 145 N.M. 286, 197 P.3d 1. "A court will impose a constructive trust to prevent the unjust enrichment that would result if the person having the property were permitted to retain it." *Id.* (internal quotation marks and citation omitted). "If a court imposes a constructive trust, the person holding legal title is subjected to an equitable duty to convey the property to a person to whom the court has determined that duty is owed." *Id.* (internal quotation marks and citation omitted).

**{53}** In light of our conclusion that Cloudview is a good faith purchaser for value without notice of the City's claimed but unrecorded interests in Parcel F, we find no grounds in the evidence presented by the City that would justify our imposition of a constructive trust upon Parcel F. In this context, Cloudview is entitled to retain the benefit of its bargain with the Mares group and its resulting fee ownership of Parcel F.

**{54}** Nevertheless, we conclude that the City presented sufficient evidence, including affidavits and deposition testimony, to allow reasonable minds to differ on the elements of the City's unjust enrichment claim against Amrep. To prevail on a claim for unjust enrichment, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695.

**{55}** Amrep has, at various times in this litigation, argued that it should not be considered a defendant of the City's unjust enrichment claim because the unjust enrichment count of the City's complaint sought specific relief in the form of a constructive trust on Parcel F, which Amrep no longer owns. We disagree. The City has always based its claim of entitlement to equitable relief on Amrep's alleged knowledge and conduct. Unjust enrichment is a claim based in equity, and once a court is "rightfully possessed of a case it will not relinquish it short of doing complete justice. It weighs the equities between the parties and adopts various devices to protect against unjust enrichment." *Id.* ¶ 13 (internal quotation marks and citation omitted). Our denial of the constructive trust relief initially requested by the City

does not prevent the City's maintenance of its unjust enrichment claim against Amrep for damages for unjust enrichment. We reverse the district court's grant of summary judgment in favor of Amrep on the City's claim for unjust enrichment and remand to the district court to consider this claim and the appropriate remedy.

## III.    CONCLUSION

{56}    Cloudview is a good faith purchaser for value of Parcel F subject only to the City's recorded drainage easement. We uphold the district court's grant of summary judgment in favor of Amrep and Cloudview on the City's fee ownership and open space easement claims. We vacate the City's administrative decision and  remand to the City's Governing Body for further proceedings consistent with this Opinion. We reverse the district court's grant of summary judgment in favor of Cloudview on Cloudview's inverse condemnation counterclaim and remand that claim to the district court where it shall be stayed pending the outcome of the City's administrative decision. We reverse the district court's grant of summary judgment in favor of Amrep on the City's unjust enrichment claim, but we uphold summary judgment on that claim as to Cloudview.

**{57}    IT IS SO ORDERED.**

 

 

**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

 

**CHARLES W. DANIELS, Chief Justice**

 

**PATRICIO M. SERNA, Justice**

 

**PETRA JIMENEZ MAES, Justice**

**RICHARD C. BOSSON, Justice, recused**

**Topic Index for *City of Rio Rancho v. Amrep Southwest, Inc.*, Docket No. 32,486, consolidated with *City of Rio Rancho v. Cloudview Estates, LLC*, Docket No. 32,489**

| **PR** | **PROPERTY** |
| --- | --- |
| PR-AD | Adverse Possession |
| PR-ES | Easement |
| PR-IC | Inverse Condemnation |
| PR-NO | Notice |

17

| PR-PS | Possession |
| PR-PR | Purchaser |
| PR-RD | Recording |
| PR-TL | Titles |