The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: July 13, 2023

**NO. S-1-SC-38601**

**IN THE MATTER OF THE LAST WILL AND TESTAMENT OF MARIE G. WELCH, Deceased,**

**PREMIER OIL & GAS, INC. and RALPH S. GRIFFIN,**

Intervenors-Plaintiffs/Respondents,

v.

**JAMES WESLEY WELCH; JOE MICHAEL WELCH; and BARBARA GRACE PARKER,**

Intervenors-Defendants/Petitioners,

and

**SAMUEL G. ALDERMAN, a/k/a SAMUEL G. ALDERMAN, JR.; RALPH S. GRIFFIN; UNKNOWN HEIRS OF JOE H. WELCH, Deceased; BARBARA S. WELCH; N. STEWART WELCH; UNKNOWN HEIRS OF GRACE WELCH PHELAN, Deceased; ESTATE OF DAVID PAUL RAETHER; FRED WALTER RAETHER; STEVEN LEE RAETHER; AMANDA MARIE WALKER; WAYLON RAETHER; UNKNOWN HEIRS OF JUDGE H.D. GRIFFIN, Deceased; BLAIR SEATON CROOKE; LISA DALE**

**CROOKE LAMPEL; FOREST ASHLEY CROOKE;**
**UNKNOWN HEIRS OF MARIE G. WELCH, Deceased;**
**and UNKNOWN CLAIMANTS OF INTEREST IN THE PREMISES,**

Intervenors-Defendants.

**ORIGINAL PROCEEDING ON CERTIORARI**
**William G.W. Shoobridge, District Judge**

Montgomery & Andrews, P.A.
Sharon T. Shaheen
Kari E. Olson
Kaleb W. Brooks
Santa Fe, NM

Kelly Hart & Hallman, LLP
Harold L. Hensley, Jr.
Derek L. Montgomery
Jeff D. Kuhnhenn
Midland, TX

David E. Keltner
Marianne M. Auld
Ft. Worth, TX

for Petitioners

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn C. Drennan
Edward R. Ricco
Albuquerque, NM

Thompson & Knight, LLP
Gregory D. Binns
Dallas, TX

for Respondents

**OPINION**

**THOMSON, Justice.**

{1}     In this bona fide purchaser case, we analyze the status of a purchaser of mineral rights that were entangled in a lengthy and complicated dispute between heirs. Our analysis comes after the Court of Appeals held that an heirship judgment that conveyed mineral rights to a good faith buyer's predecessor in interest is void for lack of jurisdiction. We consider whether the buyer is entitled to rely on the void judgment in its claim of bona fide purchaser status. In accordance with this Court's decision in *Archuleta v. Landers*, 1960-NMSC-117, ¶ 28, 67 N.M. 422, 356 P.2d 443, we conclude that a party who purchases property sold under a judgment that is not void on its face is entitled to bona fide purchaser status. We further clarify that extrinsic evidence of lack of jurisdiction is not permitted to overcome the rights of a purchaser who properly relied upon the order of the court as "an authority emanating from a competent source." *Id.* ¶ 29 (internal quotation marks and citation omitted). We therefore hold that Respondent Premier Oil & Gas, Inc. (Premier) is a bona fide purchaser, and we affirm the Court of Appeals.

**I.     BACKGROUND**

{2}     Title to the property in question, mineral rights in Eddy County (the Minerals), is complicated by the decades-old probate of the estate of previous owners of the

land. The estate dispute was litigated in the district court and the Court of Appeals, but that dispute is not before this Court. This case is about what notice of adverse title claims, if any, Premier had when it purchased the Minerals. For context, we provide a brief synopsis of the estate issues that bear on the title to the Minerals, then move to the title history, and finally address the procedural posture of the dispute at hand.

**A.    Estate History**

{3}    The Minerals were owned by Herbert and Marie Welch in the 1970s. Herbert and Marie executed a joint will in 1974 (the 1974 Will), which listed each other and their family members as heirs. When Herbert died in 1975 and his estate was probated, the Minerals were transferred in their entirety to Marie. After wrapping up Herbert's estate, Marie moved to Florida, where she executed a will in 1980 (the 1980 Will). She gave the 1980 Will to her cousin, Samuel Alderman. Marie's nephew, Ralph Griffin, knew that Marie had executed several wills, but he did not have possession of them. When Marie died in 1988, Alderman did not come forward with the 1980 Will. Griffin attempted to contact Alderman in the months after Marie's death with no success. In the years following her death, no one came forward with the 1980 Will, and Marie's estate remained unprobated for nearly twenty years,

until Griffin filed a petition in 2007 to determine heirship for Marie's estate (2007 Heirship Proceeding).

{4} Griffin's petition declared that Marie died intestate and that he was Marie's sole heir. He gave notice of the 2007 Heirship Proceeding by newspaper publication alone, addressing the notice "to the unknown heirs of Marie Griffin Welch" without naming any specific individuals. The district court issued a final judgment (2007 Judgment) finding that Marie died intestate and that Griffin was her sole heir, and awarding title to the Minerals to Griffin "as his sole and separate property."

**B.    Title History**

{5} Shortly after obtaining title to the Minerals pursuant to the 2007 Judgment, Griffin transferred the Minerals to Griffin Minerals, LLC. The LLC leased the Minerals to Sam L. Shackelford in January 2010. Later in 2010, Premier became interested in purchasing Shackelford's leasehold. Before purchasing the lease, Premier hired a title attorney to conduct a title inquiry. The attorney examined copies of "instruments purporting to be all instruments affecting [the leasehold] as found in the records of Eddy County and the District Clerk of Eddy County," including the 1974 Will and the 2007 Judgment. In March 2010, the title attorney provided an opinion letter to Premier, stating:

> Our review indicates that the title of the lessor, Griffin Minerals, LLC, is derived pursuant to a judicial determination of heirship . . . . The

> Court found that Ralph S. Griffin . . . was the only heir at law of Marie Griffin Welch, who died intestate on December 27, 1988. The chain of title for the Griffin family over three generations indicated that Ralph S. Griffin is the only heir at law of the Griffin family. The finding appears to be somewhat cursory as to Ralph S. Griffin's great-grandparents to the generational level of Marie Griffin Welch. However, notices of the proceedings were published pursuant to New Mexico law, and no other parties filed claims or appeared to object to the proposed findings of the Court. Barring a showing of fraud or a violation of procedural due process, the determination as tendered by the Court will prevail.

Premier purchased the leasehold from Shackelford in March 2010.

## C. Procedural History

{6}   In 2012, Alderman appeared and filed the initiating action in the case presently before this Court: a petition for formal probate of the 1980 Will and appointment of himself as personal representative. Griffin joined the proceeding in opposition, and ultimately the district court admitted the 1980 Will and appointed Alderman as personal representative of Marie's estate. Lengthy litigation followed, eventually Premier intervened seeking to quiet its title, and Herbert's heirs—Petitioners James Wesley Welch, Joe Michael Welch, and Barbara Grace Parker (the Welches)—counterclaimed. Therein, the Welches claimed an interest in the Minerals through Herbert's estate, and Premier claimed its ownership of the Minerals was protected under the doctrine of bona fide purchaser, while Alderman

sought to assert his title to the Minerals by seeking to set aside the 2007 Judgment and attacking Premier's claim to title.

{7} The Welches, Premier, and Griffin filed cross-motions for summary judgment. The district court granted summary judgment in favor of Griffin and Premier, "finding that Griffin was the sole heir of Marie, that Marie died intestate, that Premier [was] a bona fide purchaser of the Minerals, and that the Welches['] claims [were] barred by the provisions of the probate code, by statutes of limitation, and by various equitable doctrines." *Premier Oil & Gas, Inc. v. Welch* (*In re Last Will & Testament of Marie G. Welch*), 2021-NMCA-028, ¶ 15, 493 P.3d 400. The Welches appealed.

{8} The Court of Appeals reversed the district court's summary judgment in favor of Griffin and granted summary judgment in favor of the Welches. *Id.* ¶ 54. The Welches proved they were "interested persons" for purposes of the probate code because they could claim an interest in Marie's estate through the 1980 Will and therefore Griffin had an obligation to exercise reasonable diligence to ascertain the Welches' identities. *Id.* ¶¶ 33, 35. Because Griffin served the Welches only by publication without first exercising reasonable diligence to ascertain their identities for proper service of process, the Court of Appeals held that the 2007 Heirship Proceeding was subject to collateral attack and declared the 2007 Judgment "void as

5

to the Welches." *Id.* ¶¶ 39, 43.

{9}     The Court of Appeals' voiding of the 2007 Judgment might have defeated Premier's clear title to the Minerals. Instead, however, the Court of Appeals granted summary judgment in favor of Premier on its bona fide purchaser claim, reasoning that

> [t]he existence of the 1974 Will and the cautionary language in the title opinion do not put Premier on actual or constructive notice of title defects. . . . Premier could have reasonably relied upon the 1975 Proceeding's findings that Marie was the sole beneficiary, heir, devisee, legatee, and interested party with respect to Herbert's estate, [thus] ordering all of Herbert's property distributed to Marie. . . . Similarly, Premier justifiably relied upon the findings of the 2007 Heirship Proceeding concluding that Marie died intestate, that Griffin was her sole heir, and [thus] awarding title to the Minerals to Griffin as his sole and separate property.

*Id.* ¶ 52. The Welches petitioned for certiorari, arguing that Premier had actual notice of adverse title claims to the Minerals and was therefore not a bona fide purchaser. We granted certiorari and conclude that Premier is entitled to bona fide purchaser status. Accordingly, we affirm the Court of Appeals.

## II.     DISCUSSION

### A.     Standard of Review

{10}     The Court of Appeals effectively granted summary judgment in favor of the Welches' jurisdictional challenge to the 2007 Heirship Proceeding and affirmed the district court's summary judgment in favor of Premier based on the legal conclusion

6

that Premier was a bona fide purchaser. *Premier Oil*, 2021-NMCA-028, ¶¶ 1, 43 n.5, 54. Whether Premier is entitled to bona fide purchaser status is a question of law that we review de novo. *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146 ("[I]f no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment.").

**B.     Premier Is Entitled to Bona Fide Purchaser Protection**

{11}    A bona fide (good faith) purchaser is a party that has acquired property for valuable consideration in good faith without notice of defects in the chain of title to the property, including adverse rights or claims of other parties. *See Jeffers v. Doel*, 1982-NMSC-116, ¶ 7, 99 N.M. 351, 658 P.2d 426; *see also City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 26, 150 N.M. 428, 260 P.3d 414.

> The general rule is that a prospective purchaser of real property is deemed to have notice of adverse claims to that property if the purchaser has knowledge of such facts as ought to put a prudent person upon inquiry as to the title. Once a prospective purchaser obtains knowledge of facts that trigger a duty to inquire about the title, that purchaser must perform a reasonably diligent investigation—one that would lead to the knowledge of the requisite facts by the exercise of ordinary diligence and understanding.

*Rio Rancho*, 2011-NMSC-037, ¶ 26 (text only)[1] (citations omitted). "A person has notice of facts of which the person has reason to know as a matter of reasonable inference, or which the person would have discovered upon appropriate inquiry." Restatement (Third) of Restitution & Unjust Enrichment § 69 cmt. f (Am. L. Inst. 2011).

{12}     The issue of whether Premier is entitled to bona fide purchaser status turns on what notice, if any, Premier derived from the 2007 Judgment and on the impact of the Court of Appeals' voiding of the 2007 Judgment on Premier's notice. It is undisputed that Premier reviewed the 1974 Will and was aware of the 2007 Judgment declaring that Marie died intestate during its title search prior to purchasing the Minerals. The Welches make two arguments with respect to Premier's bona fide purchaser status and the scope of its notice. First, the Welches argue that the 1974 Will signaled to Premier that Marie had other potential heirs. That fact, they argue, put Premier on notice that there were due process concerns with the 2007 Judgment's declaration that Griffin was Marie's only heir, a potential title defect. Second, and alternatively, the Welches argue that the 1974 Will showed

---

[1]The "text only" parenthetical used herein indicates the omission of any of the following—internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text itself otherwise unchanged.

that Marie did not die intestate, which further put Premier on notice that there was a potential title defect stemming from the 2007 Judgment. Simply put, the Welches argue that Premier's review of the 1974 Will signaled to Premier that the 2007 Judgment was erroneous. The possibility that the 2007 Judgment was erroneous constituted notice of an adverse title claim.

{13} We conclude that Premier did not have actual notice of title defects for two independent reasons. First, as a bona fide purchaser, Premier may rely on the 2007 Judgment as a facially regular judgment. Second, a judgment that is the result of a court improvidently exercising its jurisdiction is not to be corrected at the expense of an innocent third party who relied on that judgment. To hold otherwise would undermine the integrity of our courts' final judgments by requiring a subsequent purchaser of land that has been involved in a lawsuit to second-guess the legitimacy of the court's facially regular judgment to protect its interest as a bona fide purchaser.

{14} We begin by distinguishing facially regular judgments from facially void judgments, starting with discussion of an analogous case, *Archuleta*, 1960-NMSC-117. *Archuleta* addressed lack of notice in a quiet title suit. *Id.* ¶¶ 1-5. In *Archuleta*, it was alleged that a plaintiff in a quiet title action knew the identity of minor heirs to the disputed property and that the plaintiff perpetrated fraud upon the court by not properly noticing the minor heirs in the suit. *Id.* ¶¶ 4-5. Unaware of the alleged notice

deficiencies, the court awarded the property to the plaintiff, who then sold it to a third party. *Id.* ¶¶ 1, 6, 26-27. Archuleta, on behalf of the minor heirs, sued in a separate action to set aside the quiet title judgment. *Id.* ¶¶ 3-5, 19. The third party claimed it was a bona fide purchaser of the property and was not chargeable with knowledge of the alleged fraud by the predecessor in title. *Id.* ¶ 27.

{15}    This Court recognized "that there is a presumption that consideration was paid and that the purchaser acted in good faith." *Id*. It relied on a decision from the Supreme Court of Oklahoma, which held, "[a] purchaser who is not a party to the proceedings is not bound to look beyond the judgment, if the facts necessary to give the court jurisdiction appear on the face of the proceedings." *Id.* ¶ 29 (quoting *Pettis v. Johnston*, 190 P. 681, 692 (Okla. 1920)). The *Pettis* Court explained, "[a] judgment is void on its face when it so appears by an inspection of the judgment roll." 190 P. at 689. This Court subsequently held that the jurisdictional deficiency caused by the service issue did not appear on the face of the judgment. *Archuleta*, 1960-NMSC-117, ¶ 32 ("In the instant case, since there is no allegation of anything appearing on the face of the judgment in the suit to quiet title or in the proceedings in that action, what was there to call to the attention of appellee, as a purchaser, any alleged defect in such proceedings?"). In other words, the judgment was not facially

void and therefore the subsequent third-party purchaser was entitled to rely on the judgment and to bona fide purchaser status.

{16}    The notice requirements in this case are no different from those applicable to *Archuleta* or *Pettis*. Griffin's failure to give notice to interested parties in the 2007 Heirship Proceeding created a jurisdictional deficiency. The Welches argue that the deficiency constitutes facial invalidity and actual notice to Premier of adverse title claims. We disagree. First, as we discuss subsequently herein, extrinsic evidence (that is, the 1974 Will) is inadmissible to overcome the rights of a bona fide purchaser. Second, and more simply, a judgment is void on its face only when there is an error on the judgment itself that indicates infirmity within the document's four corners. A judgment that is void for a service issue "if valid on its face, is not legally void in the sense that it cannot be the basis of the right and title of a bona fide purchaser of property sold under the authority of such judgment." *Pettis*, 190 P. at 691. As the United States Supreme Court noted,

> [t]he inquiry into whether an order is valid on its face is an examination of the procedural aspects of the legal process involved, not the substantive issues. Whether a process conforms or is regular 'on its face' means just that. Facial validity of a writ need not be determined 'upon the basis of scrutiny by a trained legal mind,' nor is facial validity to be judged in light of facts outside the writ's provisions which the person executing the writ may know.

*United States v. Morton*, 467 U.S. 822, 829 n.10 (1984) (quoting *In re Mathews*, 61 Comp. Gen. 229, 230-31 (1982)). Judgments that are facially irregular would include, for example, a judgment that incorrectly states the address or legal description, a judgment where the date is incorrect, a judgment that is void for lack of in rem jurisdiction because of the court's location, or a judgment where the parties' names are misspelled.[2] *See also, e.g.*, *In re Cameron's Estate*, 236 N.E.2d 626, 628 (Ind. App. 1968) ("[I]f a will that is unsigned is admitted to probate it may later be collaterally attacked." (internal quotation marks and citation omitted)). The Court of Appeals declared the 2007 Judgment void because of lack of service to interested parties that were only entitled to service because of their mention in the 1980 Will, an extrinsic document. Therefore, there is no evidence of a jurisdictional defect without relying upon extrinsic evidence; one is only aware of the defect in light of the 1980 Will.

{17}     The Welches argue alternatively that the 1974 Will informed Premier that Marie did not die intestate, a contention that conflicts with the 2007 Judgment. Assuming *arguendo* that the Welches' contention is correct—that Premier should have known there was an inconsistency between the 1974 Will and the 2007

---

[2]This list is demonstrative and nonexhaustive.

Judgment's declaration that Marie died intestate—the corresponding defect in the 2007 Judgment is only visible by looking at documents outside of its four corners, including the 1974 Will itself. While Premier may have reviewed the 1974 Will as a document in the chain of title, it was not bound to speculate about its effect on the 2007 Judgment. *See Archuleta*, 1960-NMSC-117, ¶ 29. The Welches' argument that Premier was required to view the 2007 Judgment and contemplate its validity in light of the 1974 Will fails because the 2007 Judgment was facially regular, and a bona fide purchaser is entitled to rely on it.

{18}    In addition to our holding that Premier was not bound to look beyond a facially regular judgment, we further clarify that a court's improvident exercise of its jurisdiction will not be corrected at the expense of a bona fide purchaser. In *Archuleta*, this Court noted, "'[i]f the [court's] jurisdiction has been improvidently exercised, it is not to be corrected at the expense of one who had the right to rely upon the order of the court as an authority emanating from a competent source.'" *Id.* (quoting *Pettis*, 190 P. at 692). This means that Premier is entitled to rely on the 2007 Judgment as the order of an authority emanating from a competent source notwithstanding the service issues raised in the 2007 Heirship Proceeding.

{19}    "[A] judgment is the final determination of the rights of the parties upon matters submitted to the court." 49 C.J.S. *Judgments* § 1 (2021) (footnote omitted).

And subsequent purchasers of property that has been the subject of judgments at some point in the property's chain of title must be able to rely on those final judgments as accurate unless invalid on their face. It is unfair to allow extrinsic evidence of lack of jurisdiction long after a judgment has been entered to overcome the rights of a bona fide purchaser who is entitled to rely on that judgment as final. *See Martin v. Hunter's Lessee*, 14 U.S. 304, 355 (1816) ("A final judgment of this court is supposed to be conclusive upon the rights which it decides.").

{20} To rule otherwise would mean that purchasers would have to delve into the merits of the judgment to ponder its legitimacy and even speculate as to whether the judgment would be upheld in the face of a collateral attack. This outcome is absurd. It would not only be unfair to purchasers, but it would undermine the legitimacy of our judgments and diminish public trust in our judicial system. This case clearly demonstrates our concerns. This Court is being asked to untangle a forty-five-year-old probate. In the meantime, several third parties have gained interests in the subject of the estate through reliance on orders of our courts. A decision that disallows Premier from relying on the 2007 Judgment would dissuade all purchasers like Premier from buying property that had been involved in a judicial decision, completely undermining our policy of finality of judgments. It would cause

14

purchasers like Premier to have to second-guess the decisions of our courts, decisions that are meant to be final and reliable.

{21}   It follows, then, that extrinsic evidence of lack of jurisdiction due to improper service of process cannot overcome the rights of a bona fide purchaser. This Court stated in *Archuleta*, "'those courts excluding extrinsic evidence to show want of jurisdiction for lack of service of process do so not because a judgment without service is good, but because public policy will not permit the introduction of extrinsic evidence to overcome that which it treats as absolute verity.'" 1960-NMSC-117, ¶ 28 (quoting *Pettis*, 190 P. at 692).

{22}   In this case, the 1980 Will (admitted to probate in 2012) was admissible to show that the Welches were interested persons who should have been given notice in the 2007 Heirship Proceeding. This was the Court of Appeals' rationale for voiding the 2007 Judgment. However, that same 1980 Will is inadmissible to negate Premier's rights as a bona fide purchaser.

**III.   CONCLUSION**

{23}   Premier was entitled to assume that the 2007 Judgment was valid and that it settled any adverse title claims to the Minerals. The 2007 Judgment was not facially void, and therefore Premier was not bound to look beyond it. Extrinsic evidence of lack of jurisdiction—that is, the 1974 Will and the 1980 Will—is inadmissible to

15

overcome the rights of Premier as a bona fide purchaser. For the foregoing reasons, we affirm the Court of Appeals and hold that Premier is entitled to the Minerals as a bona fide purchaser.

{24}    **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Chief Justice**

_____

**MICHAEL E. VIGIL, Justice**

_____

**JULIE J. VARGAS, Justice**

_____

**CURTIS R. GURLEY, Judge,**
**Sitting by Designation**

16