| KAKUSKA V. ROSWELL INDEPENDENT SCHOOL DISTRICT |
| --- |

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**MIKE KAKUSKA,**
**Plaintiff-Appellant,**
**v.**
**ROSWELL INDEPENDENT SCHOOL DISTRICT, ROSWELL ISD SCHOOL BOARD, and TOM BURRIS, SUPERINTENDENT,**
**Defendants-Appellees.**

Docket No. A-1-CA-36488
COURT OF APPEALS OF NEW MEXICO
April 16, 2019

APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY, William G. W. Shoobridge, District Judge

**COUNSEL**

The Jones Witt Law Firm, S. Doug Jones Witt, Roswell, NM, for Appellant

Atwood, Malone, Turner & Sabin, P.A., Bryan Evans, Barbara Evans, Roswell, NM, for Appellees.

**JUDGES**

JACQUELINE R. MEDINA, Judge. WE CONCUR: LINDA M. VANZI, Judge, BRIANA H. ZAMORA, Judge

**AUTHOR:** JACQUELINE R. MEDINA

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Plaintiff Mike Kakuska filed a complaint against the Roswell Independent School District (RISD), the Roswell ISD School Board, and Superintendent Tom Burris[1] (collectively, Defendants) for unlawful retaliation in violation of the New Mexico

---

[1] Plaintiff later agreed to the dismissal of the Superintendent in his individual capacity.

Whistleblower Protection Act (WPA), NMSA 1978, §§ 10-16C-1 to -6 (2010). The district court concluded that Plaintiff's communications were not protected under the WPA and granted Defendants' motion for summary judgment as a matter of law. We affirm.

## I. BACKGROUND

**{2}** The undisputed facts are as follows. Plaintiff was employed as the Assistant Superintendent for Human Resources for RISD. Plaintiff's job duties included serving as RISD's chief adviser in the interpretation of personnel policies, implementing federal wage and hour laws, and placing employees on the salary schedule. During Plaintiff's employment in 2012, an RISD employee was placed on administrative leave pending an investigation into whether the employee hacked another employee's email account. Plaintiff's supervisor, the Superintendent, informed Plaintiff that he intended to terminate the employee. Plaintiff responded that discharging the employee would violate RISD policy and recommended reprimand over termination. Plaintiff told the Superintendent "we'd never prevail in a court procedure" regarding the proposed termination.

**{3}** RISD ultimately determined the employee violated two school policies, one concerning the unauthorized disclosure of confidential information and the other concerning acceptable technology use. Pursuant to a settlement agreement, the employee was allowed to resign. Plaintiff acknowledged that legal counsel advised the Superintendent he was within his rights to terminate the employee.

**{4}** Later in the 2012 academic year, the Superintendent proposed restructuring the pay scale for two new administrative assistant positions. Placing employees on the pay scale and administering the salary schedule were included within Plaintiff's job duties. Plaintiff objected to the restructuring and asserted that the proposal would violate state and federal wage and hour laws. The Superintendent consulted with legal counsel and proceeded with the pay restructuring.

**{5}** Plaintiff received a work evaluation at the end of the academic year that he characterized as "the first negative evaluation of his career at RISD." Plaintiff responded to his evaluation in writing, asserting among other things, that the proposed restructuring of the pay scale for the new employees was against the law. The following academic year, RISD notified Plaintiff that his contract would not be renewed. RISD then placed Plaintiff on paid administrative leave until his contract expired in June 2014.

**{6}** Based on the above undisputed facts, RISD moved for summary judgment on the basis that Plaintiff's "alleged whistleblowing activity took place in the course of his normal job responsibilities" and therefore was not protected under the WPA. In addition, and as Plaintiff concedes, he never took his concerns to the school board, the media, or anyone outside the school district. After hearing argument from the parties, the district court entered an order granting Defendants' motion for summary judgment dismissing Plaintiff's WPA claims as a matter of law. This appeal followed.

## II. DISCUSSION

## A. Standard of Review

**{7}** We review the district court's grant of summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. We will affirm the district court "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). "The party moving for summary judgment has the initial burden of establishing a prima facie case for summary judgment by presenting such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 14, 150 N.M. 428, 260 P.3d 414 (internal quotation marks and citation omitted). Once the movant meets this burden, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted).

**{8}** This Court reviews issues of statutory interpretation de novo. *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173. We construe a statute "in light of its purpose and interpret it to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *Id.* (internal quotation marks and citation omitted). "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* ¶ 9 (alteration, internal quotation marks, and citation omitted). "We examine the overall structure of the statute and its function in the comprehensive legislative scheme." *Id.*

## B. The WPA

**{9}** The Legislature enacted the WPA "to encourage employees to report illegal practices without fear of reprisal by their employers." *Janet v. Marshall*, 2013-NMCA-037, ¶ 21, 296 P.3d 1253 (internal quotation marks and citation omitted). "The WPA was modeled after its federal counterpart." *Wills v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-105, ¶ 19, 357 P.3d 453 (citing 5 U.S.C. § 2302(b)(8) (2013)). "The WPA promotes transparent government and the rule of law." *Flores v. Herrera*, 2016-NMSC-033, ¶ 9, 384 P.3d 1070. Relevant here, Section 10-16C-3 prohibits a public employer from taking retaliatory action against a public employee because the public employee communicates about conduct that the public employee believes in good faith to be unlawful or improper, or provides information to a public body as part of an inquiry into an unlawful or improper act. An "unlawful or improper act" under the WPA

> means a practice, procedure, action or failure to act on the part of a public employer that: (1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state; (2) constitutes malfeasance in public office; or (3) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

Section 10-16C-2(E).

## C.    Plaintiff's Communications

**{10}**    Plaintiff argues that his verbal and written objection to the proposed employee discipline and pay restructuring "qualify for protection" under the WPA. Defendants continue to assert, as they did in the district court, that Plaintiff "was communicating about issues squarely within his written job description, about which he had little personal knowledge and which were personal to his own employment situation, and was communicating to his direct supervisor only, and to no one else" and, therefore, he did not engage in a protected disclosure. We first analyze Plaintiff's communications regarding the employee discipline and then turn to the salary restructuring issue.

### 1.    Employee Discipline

**{11}**    Plaintiff contends he was wrongfully terminated as a result of his communications regarding employee discipline, but he offers no argument or authority to explain why his objection to the employee discipline is protected under the WPA. Plaintiff's sole basis for this unsupported assertion is that, after he objected to the proposed discipline, the Superintendent "began retaliating against [Plaintiff] and alienating him from his work and colleagues." Because Plaintiff's argument is undeveloped, we do not address it further. *See State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 (reminding counsel that the appellate courts are not required to do their research); *State v. Stephenson*, 2015-NMCA-038, ¶ 24, 346 P.3d 409 (declining to review the state's undeveloped argument on appeal); *see also* Rule 12-318(A)(4) NMRA ("The argument [in a party's brief-in-chief] shall set forth a specific attack on any finding, or the finding shall be deemed conclusive.").

### 2.    Salary Restructuring

**{12}**    Plaintiff made two communications in response to the proposed employee salary restructuring, one in writing and one verbally. Plaintiff's written communication, which he concedes was made in response to the negative performance evaluation, alleged that RISD violated "Department of Labor law, EEOC directives and RISD Policy." We disagree with Plaintiff that this communication was a protected activity under the WPA.

**{13}**    *Wills* is instructive. In that case, the plaintiff was also terminated by a public employer after allegedly communicating about an improper or unlawful act. 2015-NMCA-105, ¶ 4. The *Wills* plaintiff filed a complaint seeking past due salary and alleging his employer breached the employment contract. *Id.* The public employer terminated the plaintiff's employment four days later. *Id.* The plaintiff then amended his complaint to allege a violation of the WPA, claiming the public employer abused its authority when it terminated his employment and the complaint itself served as a communication to the public employer or a third party of an unlawful or improper act. *Id.* ¶¶ 5, 13.

**{14}** We affirmed the district court's dismissal of the WPA claim in *Wills*, reasoning in part that "personal disagreements with legitimate managerial decisions do not demonstrate abuse of authority or any other kind of activity that could be considered a whistleblowing disclosure[.]" *Id.* ¶¶ 20-21 (internal quotation marks and citation omitted). We also said that "whistleblower protection laws are designed to protect employees who risk their own personal job security for the benefit of the public[.]" *Id.* (internal quotation marks and citation omitted). Finally, we concluded whistleblower protections laws do not protect "communications regarding personal personnel grievances that primarily benefit the individual employee." *Id.* ¶ 20.

**{15}** The undisputed facts in this case show Plaintiff's written communication was part of a personal personnel grievance. The fact that Plaintiff alleged RISD violated federal law, state law, and RISD policy in his personal grievance, does not automatically transform his communication into one protected by the WPA. Nothing about Plaintiff's response to his negative performance evaluation indicates an intent to serve any purpose other than to refute the basis for the negative evaluation.

**{16}** Once the undisputed facts showed Plaintiff's written communication regarding his objections to and disagreements with the employee pay restructuring were made in response to his negative performance evaluation, the burden shifted to Plaintiff to prove there was a genuine issue of material fact for trial and/or Defendant was not entitled to judgment as a matter of law. *See* Rule 1-056(C) NMRA (providing that summary "judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment a matter of law"); *Romero*, 2010-NMSC-035, ¶ 10 ("Once [a] prima facie showing has been made, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." (internal quotation marks and citation omitted)). Plaintiff did neither and, in fact, conceded that his written communication was in response to the negative performance evaluation. *See Romero*, 2010-NMSC-035, ¶ 7 ("Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks and citation omitted)). Therefore, we affirm the district court's grant of summary judgment as to Plaintiff's written communication.

**{17}** Plaintiff also contends that his verbal disagreement with the salary restructuring "qualifies for protection" under the WPA. We disagree. Our case law requires plaintiffs alleging "whistleblowing[ to] show that their actions furthered a public interest rather than a private one." *Garrity v. Overland Sheepskin Co.*, 1996-NMSC-032, ¶ 15, 121 N.M. 710, 917 P.2d 1382 (internal quotation marks and citation omitted); *see Wills*, 2015-NMCA-105, ¶ 20 (identifying cases in which courts have distinguished " 'whistleblowing' that benefits the public by exposing unlawful and improper actions by government employees" from communications that primarily benefit the employee or are personal disagreements with legitimate managerial decisions).

**{18}** To determine whether a communication furthers a public interest rather than a private one, "courts must determine on a case-by-case basis whether the employee's actions furthered some singularly public purpose or served primarily to benefit the private interest of the employer or employee." *Garrity*, 1996-NMSC-032, ¶ 24. Plaintiff's undisputed job duties required him to advise his employer on compliance with state and federal wage laws and regulations. These job duties explicitly contemplated Plaintiff providing RISD with the advice Plaintiff now claims is protected by the WPA and is the type of communication RISD expected Plaintiff to make. Therefore, it was in Plaintiff's own interest as Assistant Superintendent to communicate to the Superintendent his understanding of the relevant wage laws as they related to the proposed salary restructuring. Plaintiff did not make these communications to another entity, nor did Plaintiff communicate on a subject matter outside of his defined job duties. Plaintiff failed to show his verbal communication was anything other than the exact benefit RISD expected to receive by employing Plaintiff. The benefits of such a communication enure to the employer and the employee, not the public. Plaintiff failed to meet his burden of showing there was a genuine issue of material fact that his verbal communication furthered a public interest. We affirm the district court's grant of summary judgment as to this verbal communication. *See Romero*, 2010-NMSC-035, ¶¶ 7, 10.

## II.    Public Policy

**{19}** Lastly, Plaintiff argues in a single paragraph that public policy considerations mandate a different result because calling attention to public malfeasance in our public education system should be valued over a public employer's interests in running a claim-free working environment. We agree that speaking out against public malfeasance in our public education system is an important public policy concern. Indeed, the WPA was enacted in part to serve this purpose. *Janet*, 2013-NMCA-037, ¶ 21 ("[W]histleblower laws in general are meant to encourage employees to report illegal practices without fear of reprisal by their employers." (internal quotation marks and citation omitted)). However, based on the aforementioned analysis and authority, Plaintiff's communications, made in response to a negative performance evaluation and as part of his job responsibilities, are not the type of communications protected by the WPA.

**{20}** Plaintiff also argues that if we hold his communications do not merit the WPA's protection, all human resource managers and other similar positions will always be exempted from the WPA's protections. Defendants disagree with Plaintiff's argument and note that the WPA protects those human resource managers and directors of personnel who "blow the whistle" by communicating outside the normal chain of command or regarding matters outside of their normal job duties.

**{21}** Established case law requires a human resource manager seeking the WPA's protection to show evidence of a communication pertaining to a matter of public interest and that the communication is not made primarily for the benefit of the employee, or as part of the employee's normal job responsibilities. *See Garrity*, 1996-NMSC-032, ¶¶ 15, 24; *Wills*, 2015-NMCA-105, ¶¶ 20-21. This is the same standard applicable to any other

public employee. The WPA contains no provisions indicating a different standard should be applied in the context of human resources managers or those performing similar tasks. *See* §§ 10-16C-1 to -6. Plaintiff cites no authority from any jurisdiction supporting the proposition that whistleblower protection laws offer greater protection to human resource managers and those in similar positions. We therefore assume none exists and do not consider the argument further. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal.").

**CONCLUSION**

**{22}** We affirm the district court's grant of RISD's motion for summary judgment.

**{23} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA, Judge**