[No. 2476. Oct. 22, 1921.]

## HUNT v. ELLIS.

[Rehearing Denied Nov. 29, 1921.]

### SYLLABUS BY THE COURT.

Possession or occupancy of land, by one not the holder of the record title, to imply notice of an outstanding title to one purchasing from the holder of the record title, must be such as would under the circumstances put a prudent man upon inquiry.

Appeal from District Court, Union County; Leib, Judge.

Suit by Charles L. Hunt against Dave Ellis. Judgment fo rthe defendant, and the plaintiff appeals. Affirmed.

Hugh B. Woodward,. of Clayton, and A. Paul Siegel, of Nara Visa, for appellant.

Toombs & Taylor, of Clayton, for appellee.

### OPINION OF THE COURT.

RAYNOLDS, J. This is a suit to quiet title to 320 acres of land brought by Charles L. Hunt against Dave Ellis in the district court of Union county. Title is claimed by Hunt under a deed from Frederick Zivansky, patentee from the United States government, dated February 26, 1916, regularly executed, acknowledged, and filed for record in the office of the recorder of Union county, December 26, 1916. Title is claimed by the defendant, Dave Ellis, under a warranty deed from Frederick Zivansky, patentee from the United States government, dated December 6, 1916, also regularly executed, acknowledged, and delivered and properly filed for record in the office of the recorder of Union county on December 6, 1916. The plaintiff, Hunt, appellant here, on trial sought to prove actual notice to the defendant, Ellis, of plaintiff's deed at the time the defendant,

Ellis, received his deed from Zivansky, and sought further to prove such facts as would impute constructive notice to Ellis, the defendant, if he had no actual notice of plaintiff's title. The evidence of actual notice was controverted, and the court found in favor of the defendant, Ellis, on this issue.

. The facts relative to the constructive notice were substantially undisputed and uncontroverted, but the court held them insufficient to effect the defendant, Ellis, with notice of the plaintiff's title and entered a judgment that the title of Ellis was paramount. The court also found as a fact:

"That the defendant, Ellis, purchased said lands in question from said Zivansky·in good faith and for valuable consideration and without knowledge or notice of the existence of the unrecorded warranty deed executed by said Zivansky to the plaintiff, Hunt, on February 26, 1916, and without knowledge or notice that said lands had been sold to said Hunt."

The court further found:

"That the defendant Ellis, had no notice, actual or constructive, of any possession or ownership of the lands in question by the plaintifl, Hunt, at the time he received the warranty deed from Zivansky."

From the judgment in favor of Ellis holding his title paramount the plaintiff, Hunt,. appeals to this court.

The facts out of which this controversy arose are as follows:

On February 14, 1916, Frederick Zivansky received from the United States land office at Clayton a final certificate for the half section of land which is the subject of this controversy. Thereafter he listed the land for sale with one Ernest Snyder, who sold the same to the appellant for $500 and February 26, 1916, Zivansky made a warranty deed to Hunt. This deed on completion of the payment of the purchase price in May, 1916, was sent to Tucum-

cari, the county seat of Quay county, for record, instead of to Clayton, Union county. The deed was returned by the clerk to appellant's agent, who laid it away in his files, and it was not recorded in Union county until December 26, 1916. The appellant is a rancher engaged in the cattle business in Union county. The land in controversy lies within his pasture and near his home place. The ranch of appellant consists of 12,000 to 13,000 acres. He used the land in controversy for grazing while Zivansky was occupying the same as entryman. Zivansky had lived on this land continuously until the date of his final proof for a period of eight years. After selling the land to appellant, Zivansky vacated the house, but returned subsequently and lived thereon for a short time while he was working for appellant.

The record shows that Zivansky was the holder of a final receipt from the United States government at the time of Ellis' purchase. It appears in the testimony that Ellis went to the home ranch of Hunt, but that Hunt was not at home, although his wife was. He could see the Zivansky property from Hunt's home place. He made no inquiry of Mrs. Hunt as to Zivansky's claim, but immediately after inspecting the land returned to town, and a few days thereafter purchased the same from Zivansky. On trial of the case Zivansky testified first that he told Ellis he had sold the land to Hunt. This was denied by Ellis. Before he sold the land to Ellis he signed an affidavit, which was introduced in evidence, that he owned the land. He did this in order to get his patent thereto from the United States government, although at the time it appears that he had already made a deed to Hunt for the property in question. The testimony of this witness, Zivansky, was contradictory, and unsatisfactory, and was probably disregarded by the court as he seemed uncertain on

every particular about which he testified and contradicted himself numerous times.

Appellant assigns 11 errors, but simplifies the issue before this court by two statements in his principal and reply brief to the effect that the whole case turns upon one question, i. e.: Was the possession of Hunt as proved by the uncontroverted evidence sufficient to charge the subsequent purchaser, Ellis, with knowledge of Hunt's title? Appellant further states that in this case, the court having found the defendant had no actual notice of the unrecorded deed, plaintiff's case fails unless his acts of possession were sufficient to impute constructive notice to the defendant of plaintiff's title. Further appellant states that it is the conclusion of the court, set forth in the second finding above quoted which appellant alleges is error, and submits to the appellate court the question whether the undisputed facts were not such as to effect Ellis with constructive notice of Hunt's unrecorded deed.

As shown from the above quotations from the brief of appellant, the whole question turns upon the proposition of whether or not the possession of Hunt was such as to amount to constructive notice to Ellis and whether the court came to an erroneous conclusion as to such notice. Appellant claims that he exercised the following acts of possession over the land in question after the purchase: First, that he altered the fences thereon; second, that he used the house upon said land as a tenant house for his employees; third, that he used the lands continuously as fenced and inclosed pasture for the purpose of grazing cattle bearing his recorded brand to the exclusion of other cattle; fourth, that he used the house on the land in question as a storehouse for cotton seed cake from the middle of October, 1916, continuously until May, 1917, and during these months this house was under lock and key, and that

appellant carried the keys; fifth, that he used the vicinity of the house upon the land in question as a feeding place where he fed 270 head of cattle cotton seed cake daily from the first week in November, 1916, until the following May.

In regard to the first proposition that he altered the fences thereon, the appellant testified on cross-examination that the fence to the property was practically in the same position subsequent to the purchase as it had been for years before Zivansky proved up. In regard to the four other acts of possession, they were identical with appellant's action before the purchase; that is, he had used the house for his employees; had grazed his cattle upon the land in question; Zivansky had lived in the house subsequent to the purchase; and it is not shown by the evidence that the act of storing cotton seed cake in the house and keeping it under lock and key made any apparent change in the possession of which the appellant had notice.

The general principle as to notice to effect purchaser for value is as follows:

"Knowledge of such facts as ought to put a prudent man upon inquiry as to the title charges a subsequent purchaser with notice, not only of those facts which are actually known, but also of all other facts which a reasonably diligent investigation would have ascertained, provided the inquiry becomes a duty and would lead to the knowledge of the requisite facts by the exercise of ordinary diligence and understanding. * * * In applying the rule each case must be governed by its own peculiar circumstances." "Vendor and Purchaser," 39 Cyc. p. 1703.

This case turns upon the question of possession or occupation by another as being notice to the purchaser from one having the record title.

"The occupation must be of a character which would put a prudent person upon inquiry; it must indicate that some one other than he who appears by the record to be the owner has rights in the premises. What acts may or may not

constitute a possession are necessarily varied and depend to some extent upon the nature, locality, and use to which the property may be applied, the situation of the parties, and a variety of circumstances which have necessarily to be taken into consideration in determining the question. Actual residence upon the land is not required to effect constructive notice of title. If the party is in actual possession, and there are continuous acts of ownership, it is sufficient. It has been held that possession must be evidenced by an inclosure, or something equivalent, as showing the extent and fact of his dominion and control in the premises. But this is not necessary where there are other appropriate acts of occupancy." Vendor and Purchaser." Cyc, pp. 1749 and 1750, and cases cited.

As stated in the above quotation, notice depends upon many circumstances and varies with the particular case. There is a conflict of opinion as to what is actual notice (29 Cyc. 1113, "Notice"), and the words "constructive notice" are sometimes used to denote such notice as the law implies from the recording acts and also from acts and circumstances. Distinctions are also made as to implied and express notice. See "Notice," 20 R. C. L. 339, par. 2 and cases cited. It is unnecessary for us in this case to discuss or attempt to reconcile the various definitions or elucidate the distinctions.

It is vigorously contended by the appellant that the case of McBee v. O'Connell, 19 N. M. 565, 145 Pac. 123, is controlling, and we agree that, although the facts in that case are different, the principle therein announced governs this case. In that case the court, after considering the authorities, quoted from the case of Dickey v. Lyon, 19 Iowa 544, as follows:

"A person who purchases an estate in the possession of another than his vendor is in equity—that is, in good faith—bound to inquire of such possessor what right he has in the estate. If he fails to make such inquiry which ordinary good faith requires of him, equity charges him with notice of all the facts that such inquiry would disclose."

The case, however, differs from the present one in

the nature of the possession. In that case it was held that the possession of the plaintiff's tenant was such as to put defendants on inquiry as to plaintiff's rights. That situation does not exist in the present case. The subsequent possession of Hunt was not different from that which it had been before the transfer, and there was nothing under the circumstances of this case in his subsequent possession —that is after the making of the deed to him—to put Ellis upon inquiry as to Hunt's rights in the property.

For the reasons above stated, we hold that the conclusion of the trial court was correct.

The judgment is therefore affirmed; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.