IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-028

Filing Date: October 15, 2020

No. A-1-CA-37121

IN THE MATTER OF THE LAST WILL
AND TESTAMENT OF MARIE G.
WELCH, Deceased,

PREMIER OIL & GAS, INC. and RALPH
S. GRIFFIN,

      Intervenor Plaintiffs/Appellees,

v.

JAMES WESLEY WELCH; JOE
MICHAEL WELCH; and BARBARA
GRACE PARKER,

      Intervenor Defendants/Appellants,

and

SAMUEL G. ALDERMAN a/k/a SAMUEL G.
ALDERMAN, JR.; RALPH S. GRIFFIN;
UNKNOWN HEIRS OF JOE H. WELCH,
Deceased; BARBARA S. WELCH; N.
STEWART WELCH; UNKNOWN HEIRS OF
GRACE WELCH PHELAN, Deceased;
ESTATE OF DAVID PAUL RAETHER; FRED
WALTER RAETHER; STEVEN LEE
RAETHER; AMANDA MARIE WALKER;
WAYLON RAETHER; UNKNOWN HEIRS
OF JUDGE H.D. GRIFFIN, Deceased; BLAIR
SEATON CROOKE; LISA DALE CROOKE
LAMPEL; FOREST ASHLEY CROOKE;
UNKNOWN HEIRS OF MARIE G. WELCH,
Deceased; and UNKNOWN CLAIMANTS OF
INTEREST IN THE PREMISES,

      Intervenor Defendants.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**William G.W. Shoobridge, District Judge**

Certiorari Granted, August 5, 2021, No. S-1-SC-38601. Released for Publication August 31, 2021.

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn Drennan
Edward Ricco
Albuquerque, NM

Thompson & Knight LLP
Gregory D. Binns
Dallas, TX

for Appellee Premier Oil & Gas, Inc.

Martin, Dugan & Martin
W.T. Martin Jr.
Kenneth D. Dugan
Carlsbad, NM

for Appellee Griffin

Montgomery & Andrews, P.A.
Sharon T. Shaheen
Kaleb W. Brooks
Santa Fe, NM

Kelly Hart & Hallman LLP
Harold L. Hensley, Jr.
Bill B. Caraway
Jeff Kuhnhenn
Midland, TX
David E. Keltner
Marianne M. Auld
Matthew D. Stayton
Fort Worth, TX

for Appellants

## OPINION

**B. ZAMORA, Judge.**

**{1}**     James Wesley Welch, Joe Michael Welch, and Barbara Grace Parker, (collectively, the Welches) appeal the district court's grant of summary judgment

quieting title in favor of Premier Oil & Gas Inc. (Premier) and Ralph S. Griffin, and finding that Premier is a bona fide purchaser with respect to the minerals (the Minerals) at issue in this case. On appeal, the Welches argue that the district court erred in granting summary judgment in favor of Griffin and Premier because the wills at issue devised vested future interests in the Minerals to the Welches' predecessors in title, and because the proceeding through which Griffin derived his title to the Minerals is void for lack of proper notice. The Welches further contend that the district court erred in refusing to construe the terms of the 1980 will (the 1980 Will) because the district court misapplied our probate code's statutory bars. For the reasons that follow, we affirm the district court's grant of summary judgment in favor of Premier with respect to its status as a bona fide purchaser but reverse the grant of summary judgment in favor of Griffin.

## BACKGROUND

{2}     A long and complicated chain of events led to the district court's ruling in this case. Nearly two dozen separate individuals and corporations were parties to this case at various points. Purported interests in the Minerals were repeatedly sold and transferred, and multiple claimants to the Minerals passed away during the course of the events we describe below. For the sake of expediency, efficiency, and clarity, we present here only those facts relevant to our ultimate holdings.

### A.     The Parties

{3}     At issue in this case are rights of ownership to Minerals located in Eddy County, New Mexico, which derive from Herbert and Marie Welch, husband and wife, who owned the Minerals as joint tenants. Herbert and Marie had no children. The Welches claim title to the Minerals based on devises to their predecessors in interest, Joe H. Welch (Herbert's brother) and Grace Welch Phelan (Herbert's sister) made by Marie and Herbert. Barbara Grace Parker is the granddaughter of Grace Welch Phelan. James Wesley Welch and Joe Michael Welch are the sons of Joe H. Welch.

{4}     Griffin is Marie's nephew, and claims title to the Minerals through a 2007 heirship proceeding (the 2007 Heirship Proceeding). Finally, Premier claims ownership of the Minerals through purchase; a series of transactions resulted in Premier's ultimate ownership of the Minerals after they were sold by Griffin.

{5}     While not a party to this appeal, Samuel G. Alderman (deceased) filed the underlying proceeding now subject to this appeal and played an important factual role in this matter. Alderman is Marie Welch's cousin, and claims an interest in the Minerals through devise.

### B.     The 1974 Will

{6}     The factual events leading to this appeal began over forty-six years ago. On February 6, 1974, Herbert and Marie Welch executed a joint last will and testament (the 1974 Will). In paragraph two of the 1974 Will, Herbert devised to Marie "all of [his]

property of every kind, both real and personal, wherever the same be found or located." However, paragraph six of the 1974 Will provided "[t]hat the survivor shall divide our estate, which is community property, in the following manner, to-wit; the community interest of HERBERT WELCH shall be equally divided between Joe H. Welch, his brother, and Grace Welch Phelan, his sister[.]"

**{7}** After Herbert's death, Marie filed an action to probate the 1974 Will in Eddy County, New Mexico (the 1975 Proceeding). The probate court entered a final decree in the 1975 Proceeding, finding that Marie was the sole beneficiary, heir, devisee, legatee, and interested party with respect to Herbert's estate, and ordering all of Herbert's property distributed to Marie. While serving as executrix of Herbert's estate, Marie executed a mineral deed transferring the Minerals to herself as a "feme sole." The legal description of the minerals set forth in the deed encompasses all of the mineral interests at issue in this case. No person has ever filed a direct challenge to the 1975 Proceeding.

## C.      The 1980 Will

**{8}** The record suggests that Marie drafted a number of wills, including a 1976 will (the 1976 Will) between the time of Herbert's death, and her own death in 1987. In 1980, Marie executed the 1980 Will, which is the latest will that appears in the record before this Court. The 1980 Will contains the following relevant provisions:

ITEM 6.

If owned by me at my death, I give, devise and bequeath my undivided one-fourth (1/4) interest in mineral rights that I received from my deceased husband to Joe H. Welch of Carlsbad, New Mexico; however, if he should predecease me then I hereby give, devise and bequeath that share to the issue of his body per stirpes.

ITEM 7.

If owned by me at my death, I give, devise and bequeath all mineral rights owned by me in my own name on properties in Montana and New Mexico in equal shares to Ralph S. Griffin of Carlsbad, New Mexico and Samuel G. Alderman of Jacksonville, Florida.

Marie named Alderman as her personal representative, and provided Alderman with the original of the 1980 Will shortly after its execution.

**{9}** Marie moved to Florida sometime prior to July 1976. She died on December 27, 1988, in Duval County, Florida. No one attempted to probate the 1980 Will within three years of Marie's death, nor did anyone take steps to dispose of Marie Welch's estate in accordance with the terms of any will or the law of intestacy until 2007. Alderman held

that the 1980 Will was in his possession, but did not offer it for probate because he was hiding from creditors.

## D.     The 2007 Heirship Proceeding

**{10}**    Griffin knew that Marie had executed a will in 1976, however he was not aware of its contents, he did not have the will in his possession, and he did not know the identities of any devisees other than himself and Alderman. There is no evidence that Griffin was aware of the 1980 Will. In the months following Marie's death, Griffin attempted to contact Alderman by phone and in writing on several occasions to discuss Marie's estate, and probate of the 1976 Will. In one such letter, Griffin wrote, "I am not sure if you have probated Aunt Marie's will or if she had a new one written since the one dated July 6, 1976 in which uncle Harvey was named executor with you and me as co-executors." Alderman did not respond to Griffin's attempts to discuss Marie's estate by phone and letter, and at some point, his telephone was disconnected. Griffin checked the probate records in Florida to determine if Marie's estate had been probated, but his search revealed no records. Griffin eventually hired a private investigator to locate Alderman in a final attempt to determine the status of Marie's estate, but the private investigator was unable to locate him.

**{11}**    On January 16, 2007, more than seventeen years after his efforts to locate Alderman and the 1976 Will proved unsuccessful, Griffin filed a petition for determination of heirship in New Mexico with respect to Marie (the 2007 Heirship Proceeding). In his petition for determination of heirship, Griffin declared that Marie died intestate and that he was Marie's sole heir. Griffin did not make any further efforts to locate Alderman and noticed the 2007 Heirship Proceeding by publication alone, addressing the notice "to the unknown heirs of Marie Griffin Welch[,]" without naming specific individuals. On March 30, 2007, the court issued a final judgment in the 2007 Probate Proceeding. The district court found that Marie Welch died intestate, that Griffin was her sole heir, and awarded title to the Minerals to Griffin as his sole and separate property. No person has ever previously filed a direct challenge to the validity of the 2007 Heirship Proceeding. [1]

## E.     The 2012 Proceeding

**{12}**    In 2012 Alderman filed a petition for formal probate of will and appointment of personal representative, initiating the present litigation (the 2012 Proceeding). Alderman sought to probate the 1980 Will and obtain title to certain portions of the Minerals. Griffin joined the 2012 Proceeding and opposed Alderman's efforts to probate the 1980 Will and appoint himself personal representative. The district court admitted the 1980 Will to probate and appointed Alderman as personal representative of the Estate over Griffin's objection.

---

1Following the 2007 Heirship Proceeding, Griffin transferred his purported interest in the Minerals to Griffin Minerals, LLC, and the Minerals were subsequently sold and transferred between several oil and gas entities before being ultimately purchased by Premier.

**{13}**    Griffin appealed, challenging the district court's jurisdiction and contending that probate of the 1980 Will and appointment of Alderman as personal representative were barred by the statute of limitations, res judicata, collateral estoppel, and laches. Principally, Griffin claimed that the 2007 Heirship Proceeding barred the 1980 Will from probate because the judgment issued in the 2007 Heirship Proceeding declared that Marie died intestate.[2] In March 2014 this Court remanded the matter, directing the district court to analyze the applicability of NMSA 1978, Sections 45-3-108 (2011) and 45-3-412 (1995) to Alderman's attempt to probate the 1980 Will, to produce an order setting forth the facts and law underlying its determination, and to conduct such further proceedings as the district court deemed necessary and consistent with the appellate order.

**{14}**    Following remand from this Court, a number of interested parties joined or intervened, including the Welches and Premier. The Welches filed counterclaims seeking both a declaration of their rights under the 1974 and 1980 wills and a declaration that the 2007 Judgment was void for lack of jurisdiction due to improper service and due process violations.

## F.    The District Court Ruling

**{15}**    Following further litigation, the Welches, Premier, and Griffin filed cross-motions for summary judgment in the 2012 Proceeding. The Welches sought to have the 2007 Heirship Proceeding declared void, sought a ruling from the district court that Premier could not claim bona fide purchaser status, and sought to quiet title to the Minerals in themselves. In contrast, Griffin sought ruling that the 2007 Heirship Proceeding was binding, and Premier sought to confirm title to the Minerals in itself, as well as a declaration that Premier was a bona fide purchaser. The district court entered an order granting summary judgment in favor of Premier and Griffin, finding that Griffin was the sole heir of Marie, that Marie died intestate, that Premier is a bona fide purchaser of the Minerals, and that the Welches claims are barred by the provisions of the probate code, by statutes of limitation, and by various equitable doctrines. This appeal followed.[3]

## DISCUSSION

**{16}**    "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ⁋ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary

---

2While Griffin's appeal was pending, Alderman (individually and as the personal representative of the Estate) executed an oil and gas lease with Mewbourne Oil Company covering the Minerals. Premier has since acquired this lease and is the lessee thereunder.
3Of the numerous parties to this case, only the Welches appeal from the district court order, and only Griffin and Premier filed answer briefs.

facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted).

**{17}** "On appeal from the grant of summary judgment, we ordinarily review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "However, if no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *Id.* The parties do not dispute any material facts, and accordingly, we apply a de novo review standard.

**{18}** "Statutory construction is a matter of law we review de novo." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868. "When facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts." *LSF9 Master Participation Tr. v. Sanchez*, 2019-NMCA-055, ¶ 10, 450 P.3d 413 (internal quotation marks and citation omitted).

**{19}** On appeal, the Welches assert seven distinct arguments and allegations of district court error. Because our holdings with respect to the finality of the 1974 Will, notice of the 2007 Heirship Proceeding, proper application of the provisions of the probate code, and Premier's status as a bona fide purchaser are dispositive, we address only the parties' arguments on these points.

## I.  The 1974 Will

**{20}** The Welches argue that the 1974 Will devised vested future interests in the Minerals to the Welches' predecessors in title. They argue that these vested future interests pre-date and preclude Griffin's mineral title claims derived from the 2007 Heirship Proceeding. Because the unchallenged 1975 Proceeding is a binding and final adjudication of rights under the 1974 Will, and because the final decree in that proceeding awarded the entirety of Herbert's estate to Marie, we disagree that the Welches acquired any vested future interests in the Minerals through the 1974 Will.

**{21}** The Welches claim that the 1974 Will was a contractual will that granted Marie a life estate in Herbert's half of the community Minerals, the remainder of which created vested interests in the Minerals in favor of the Welches' predecessors in interest. The Welches contend that the 1975 Proceeding probating the 1974 Will did not adjudicate whether the Welches' predecessors possessed future interests in Herbert's community share of the estate, nor make any determination as to heirship or title. Alternatively, the Welches argue that even if the probate court did determine title, the adjudication is void because the probate court had no jurisdiction over issues of title. The Welches cite to case law from other states standing for the proposition that a final decree admitting a will to probate does not constitute a final adjudication of will construction, and assert

that the district court in this case erred in refusing to construe the final decree issued in the 1975 Proceeding. The Welches urge us to undertake the task that the district court declined—to construe the terms of the 1974 Will, declare it contractual, and hold that the Welches obtained a vested interest in the Minerals. We decline to do so.

**{22}** We begin by addressing the Welches' argument that the probate court presiding over the 1975 Proceeding lacked the power to make determinations regarding title. The law (as it existed when the final decree in the 1975 Proceeding was entered) required probate courts to "determine the heirship to [the] decedent, the ownership of his estate, and the interest of each respective claimant thereto, or therein, and the persons entitled to distribution thereof[.]" NMSA 1953, § 31-12-12 (1925). The law further specified that "the final determination of the court . . . shall be final and conclusive in the distribution of said estate and in regard to the *title to all property of the estate*[.]" *Id.* (emphasis added); *see In re Conley's Will*, 1954-NMSC-112, ¶¶ 13-16, 58 N.M. 771, 276 P.2d 906 (concluding that probate courts have jurisdiction to make determinations of estate distribution that are binding on the world). A constitutional amendment adopted in 1949, which remains unchanged to the present day, granted probate courts jurisdiction to determine heirship with respect to real property. *See* N.M. Const. art. VI, § 23 (stating that "the probate courts of New Mexico . . . shall also have jurisdiction to determine heirship with respect to real property in all proceedings for the administration of decedents' estates"). While the Welches claim that this constitutional provision limits probate court jurisdiction to determine title to real property outside the context of an heirship determination, we construe this provision as a grant of explicit power rather than a limitation, and in combination with the aforementioned case and statutory law, we conclude that the probate court had jurisdiction to enter a final decree determining title to the Minerals when it administered Herbert's estate. The statutory language of the probate code and the constitutional amendment permitted probate courts to determine title in proceedings involving administration of estates, whether by heirship or by devise through a will.

**{23}** We turn now to the Welches alternative argument—that even if the probate court had jurisdiction to adjudicate title, it did not actually do so. At the conclusion of the 1975 Proceeding, the probate court issued a final decree listing Marie as the sole heir, devisee, legatee, and interested party with respect to the 1974 Will. The final decree states in relevant part,

> Under the terms of the Last Will and Testament of the deceased, his wife, Marie G. Welch having survived the decedent was devised and bequeathed the entire estate; and all properties involved have been liquidated or transferred pursuant to the aforesaid provisions of the Last Will and Testament of Herbert Welch.
>
> . . . .
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED . . . .

> That all the properties as shown in the [i]nventory not already transferred be, and they are hereby, ordered distributed to Marie G. Welch[.]

This language in the probate court's final decree clearly articulates the court's intent to resolve any and all interests in property of the estate. The fact that the final decree does not mention the word "title" does not mean, as the Welches contend, that the probate court did not adjudicate title to the Minerals.

{24}    Further, while no party has referred us to the inventory, we note that Marie Welch provided the probate court with a signed affidavit stating, "[t]he decedent died seized of real estate described in the [i]nventory on file herein. Said real property vests as provided in the Last Will and Testament of Herbert Welch, deceased, and in accordance with the laws of the State of New Mexico, in its entirety, in Mare G. Welch." The inventory contains a legal description that encompasses all of the Minerals at issue in this case. For the foregoing reasons, we conclude that the probate court unequivocally awarded all of Herbert's property of every kind to Marie, including title to the Minerals.

{25}    We turn now to the Welches' contention that the district court erred in holding that it was barred from construing the 1974 Will by the binding terms of the final decree issued in the 1975 Proceeding. We look again to the law as it existed when the final decree in the 1975 Proceeding was entered. "[T]he final determination of the court . . . shall be final and conclusive in the distribution of said estate and in regard to the title to all property of the estate[.]" Section 31-12-12 ; *see In re Conley's Will*, 1954-NMSC-112, ¶¶ 13-16 (stating that probate courts have jurisdiction to make determinations of estate distribution that are binding on the world); *see also* NMSA 1953, § 30-2-21 (1943) (stating that "[i]f no person shall, within six (6) months after the probate, contest the same, or the validity of the will . . . the probate of the will shall have the same effect as the final decree").

{26}    We decline the Welches' invitation to construe the 1974 Will anew. No party has ever directly challenged or appealed the 1975 Proceeding, and its findings are now binding and conclusive. *See* § 30-2-21 (1943) (specifying that challenges not brought within six months are barred). We do not address whether the probate court's interpretation of the 1974 Will was correct because the 1975 Proceeding is not before us on appeal. Instead, we merely reiterate the law's declaration that the 1975 Proceeding is "final and conclusive in the distribution of said estate and in regard to the title to all property of the estate[,]" Section 31-12-12, and note that all statutes of limitation with respect to direct challenges to the 1975 Proceeding have long since passed. *See* § 30-2-21 (1943). Because the 1975 Proceeding did not declare the 1974 Will to be contractual, the Welches' claim on this front fails. Similarly, the Welches' argument that they received vested interests through the 1974 Will fails. The final decree unambiguously concluded that all rights to the property of the decedent "vest[ed] . . . in [their] entirety, in Marie G. Welch." Since the 1975 Proceeding vested all of Herbert Welch's property in Marie Welch, it vested no one else with any interest in the Minerals.

## II.    The 2007 Heirship Proceeding

**{27}**    The Welches contend that the 2007 Heirship Proceeding from which Griffin derived his title to the Minerals is void for lack of jurisdiction because the published notice was defective, and because the Welches never received notice. It is undisputed that Griffin noticed the 2007 Heirship Proceeding by publication and did not send notice to any individual directly. Rather, Griffin only attempted to provide notice by publication, addressing the notice "to the unknown heirs of Marie Griffin Welch[,]" without naming any specific individuals as potential heirs or interested parties. The Welches argue that Alderman was a known heir, and point out that Griffin did not attempt to serve Alderman with notice despite having previously attempted to locate Alderman to discuss Marie's 1976 Will in the late 1980's. For these reasons, the Welches contend that the 2007 Heirship Proceeding is void. In contrast, Premier and Griffin argue that the Welches are not interested persons who were entitled to notice because the Welches' claimed interest in the Minerals were extinguished by the 2007 Heirship Proceeding finding that Marie died intestate, and by statutes of limitation set forth in the probate code, which bar attempts to challenge formal testacy proceedings unless certain exceptions apply.

**{28}**    The Welches have mounted a collateral attack on the judgment by seeking a declaration that the 2007 Heirship Proceeding is void. *See Lewis v. City of Santa Fe*, 2005-NMCA-032, ¶ 10, 137 N.M. 152, 108 P.3d 558 ("A collateral attack is an attempt to avoid, defeat, or evade a judgment, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking the judgment." (alteration, internal quotation marks, and citation omitted)). Judgments can be attacked collaterally if "lack of jurisdiction appears affirmatively on the face of the judgment or in the judgment roll or record, or is made to appear in some other permissible manner." *In re Estate of Baca*, 1980-NMSC-135, ¶ 11, 95 N.M. 294, 621 P.2d 511. When attacked for failure of service of process, a judgment may be declared "void only as to those persons not served and their successors." *Id.* ¶ 10. "A litigant may collaterally attack a judgment by impeaching that judgment with matters outside of its record." *T.H. McElvain Oil & Gas Ltd. P'ship v. Grp. I: Benson-Montin-Greer Drilling Corp.*, 2017-NMSC-004, 388 P.3d 240, ¶ 22; *see also Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2017-NMSC-010, ¶ 32, 390 P.3d 174, 182 (same).

**{29}**    The Welches premise their collateral attack on the 2007 Heirship Proceeding on constitutional grounds, alleging that "the 2007 Judgment is void for lack of jurisdiction because constitutional due process notice requirements were not satisfied." As we explain in further detail below, both the notice provisions of the probate code and due process require parties to exercise reasonable diligence to ascertain the identities and addresses of interested persons and serve them with notice. *See T.H. McElvain*, 2017-NMSC-004, ¶ 25; NMSA 1978, § 45-3-403(B) (2011) Our ultimate holding with respect to the validity of the 2007 Heirship Proceeding is premised on the statutory language of the probate code. Nevertheless, we refer to due process case law during the course of our analysis because we construe the statutory notice provisions of the probate code and the requirements of due process as coextensive with respect to the requirement of due diligence, the aim of providing notice to interested parties, and the establishment of

jurisdiction over such parties. *Compare T.H. McElvain*, 2017-NMSC-004, ¶ 25 ("A judgment entered absent sufficient service of process upon a defendant violates due process and is void as to the defendant for want of personal jurisdiction."), *with* § 45-3-403(B) (requiring the exercise of due diligence prior to resorting to publication), *and* NMSA 1978, § 45-3-106 (1995) ("In proceedings before the district court where notice is required by the [probate code] or by rule, and in proceedings to construe probated wills or determine heirs which concern estates that have not been and cannot now be opened for administration, interested persons may be bound by the orders of the district court in respect to property in or subject to the laws of New Mexico by notice in conformity with [NMSA 1978,] Section 45-1-401 [(1975, amended 2011)"]). An order is binding as to all who are given notice of the proceeding though less than all interested persons are notified."). *See* NMSA 1978, § 45-1-201(A)(19) (2011) (stating that " 'formal proceedings' means proceedings conducted before a district judge with notice to interested persons"). On summary judgment, Griffin and Premier as the moving parties were required to meet the initial burden of establishing a prima facie case that the 2007 Heirship Proceeding is valid. *See T.H. McElvain*, 2017-NMSC-004, ¶ 21. There is no question that they have met this burden. The judgment issued in the 2007 Heirship Proceeding is a final testacy order that may not be modified or vacated more than twelve months after it was entered. *See* § 45-3-412(A)(3)(c). In addition, the law requires that "every presumption consistent with the record [be] indulged in favor of the jurisdiction of courts of general jurisdiction whose judgments cannot be questioned when attacked collaterally, unless lack of jurisdiction appears affirmatively on the face of the judgment or in the judgment roll or record, or is made to appear in some other permissible manner." *In re Estate of Baca*, 1980-NMSC-135, ¶ 11. Because Griffin and Premier have established a prima facie case that the 2007 Heirship Proceeding is valid, the burden of collaterally attacking this presumptively valid judgment lies with the Welches. *See Thoma v. Thoma*, 1997-NMCA-016, ¶ 25, 123 N.M. 137, 934 P.2d 1066 (holding that the burden of proof in a collateral attack lies with the attacking party); *In re Estate of Baca*, 1980-NMSC-135, ¶ 11 (indulging every presumption in favor of a court's exercise of jurisdiction in issuing a final judgment).

**{30}**    In order to collaterally attack the 2007 Judgment, the Welches must first prove that they were interested persons entitled to notice under the statutory provisions governing notice requirements with respect to formal testacy proceedings. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, *to apprise interested parties* of the pendency of the action and afford them an opportunity to present their objections." (emphasis added)).

**{31}**    If the Welches succeed in proving that they were interested persons entitled to notice, they must then prove that the notice provided by Griffin was invalid in order to collaterally attack the judgment as void. *See* § 45-3-412(A) (providing that a formal testacy order is final unless persons entitled to notice can show that the notice was invalid); *T.H. McElvain*, 2017-NMSC-004, ¶ 22 ("Void judgments can be subject to a collateral attack."); *id.* ¶ 25 ("A judgment entered absent sufficient service of process

upon a defendant violates due process and is void as to the defendant for want of personal jurisdiction.").

## A.     Notice to Interested Persons

**{32}**   We turn to the language of our probate code to determine whether the Welches were interested persons entitled to notice. First, Section 45-3-403(B) sets forth the notice requirements for formal intestacy proceedings and requires, in relevant part, that notice be given to

> heirs of the decedent (who would have taken had the decedent died intestate); the devisees and personal representatives named in any will that is being, or has been, probated . . . . In addition, the petitioner shall give notice *by publication* to *all unknown persons and to all known persons whose addresses are unknown who have any interest in the matters being litigated*.

Section 45-3-403(B) (emphasis added). As Griffin points out, the Welches are not heirs of Marie; their sole claim to the Minerals in this case is premised upon devise, not inheritance through intestacy. In addition, at the time of the 2007 Heirship Proceeding, the 1980 Will had not been probated, and Griffin was not attempting to probate any will through the intestacy proceeding. Accordingly, the Welches were not "devisees" within the meaning of Section 45-3-403(B) either. The only way in which the notice requirements could apply to the Welches is if they are "persons . . . who have any interest in the matters being litigated." *Id.*

**{33}**   For purposes of the probate code, " 'interested person' includes heirs, devisees, children, spouses, creditors, beneficiaries *and any others having a property right in or claim against a trust estate or the estate of a decedent*[.]" Section 45-1-201(A)(26) (emphasis added). We have previously held that persons who claim an interest in estate proceedings through a will, even if that will is late-discovered, are "interested persons." *See In re Estate of Lee*, 2001-NMCA-037, ¶ 16, 130 N.M. 460, 26 P.3d 764 (holding that a devisee identified in a will thought to be destroyed or lost, but which was later recovered, had a property right in, and or claim against the estate at issue). We hold that the devises in the 1980 Will in favor of the Welches' predecessor in interest, render the Welches interested persons for purposes of the 2007 Heirship Proceeding.

**{34}**   Nevertheless, the mere fact that the Welches are interested persons does not necessarily entitle them to notice beyond notice by publication. Section 45-1-401(A)(3) specifically authorizes notice by publication for any persons whose identity is not known and cannot be ascertained with reasonable diligence. Providing, in pertinent part:

> If notice of a hearing on any petition is required and except for specific notice requirements as otherwise provided, the petitioner shall cause notice of the time and place of hearing of any petition to be given to any interested person . . . *if the address or identity of any person is not known*

*and cannot be ascertained with reasonable diligence*, [notice shall be given] by publishing a copy thereof once a week for three consecutive weeks in a newspaper of general circulation in the county in which the hearing is to be held, the last publication of which is to be at least ten days before the time set for the hearing.

*Id.* (emphasis added); *see also* § 45-3-403(A) (stating that "[u]pon commencement of a formal testacy proceeding . . . [n]otice shall be given in the manner prescribed by Section [45-]1-401"). Reading Sections 45-1-401(A)(3) and 45-3-403(B) together, "if the address or identity of any person is not known and cannot be ascertained with reasonable diligence," Section 45-1-401(A)(3) notice may be given by publication to all such "unknown persons and to all known persons whose addresses are unknown who have any interest in the matters being litigated." Section 45-3-403(B). However, publication is only authorized where "the address or identity of any person is not known and cannot be ascertained with reasonable diligence[.]" Section 45-1-401(A)(3). Accordingly, the exercise of reasonable diligence to ascertain interested persons identities and addresses is a prerequisite to providing notice by publication alone.

## B.     Reasonable Diligence

**{35}**     Because the Welches were interested persons, Griffin had an obligation to exercise reasonable diligence in an attempt to ascertain their identities and whereabouts. The requirement of reasonable diligence contained in Section 45-1-401 is similar to the diligence required to afford a person due process. *See T.H. McElvain*, 2017-NMSC-004, ¶ 26 ("To meet the fundamental requirements of due process, a plaintiff must undertake a diligent and good faith effort to locate [interested persons] and serve them personally with notice."). "Notice by publication, then, is proper in some circumstances as a last resort." *Id.* ¶ 28 (citing *Campbell*, 1949-NMSC-030, ¶ 31, 53 N.M. 280, 206 P.2d 1145 (stating that "[c]onstructive service . . . is only resorted to from necessity") (internal quotation mark and citation omitted)).

**{36}**     Because Griffin served the Welches by publication without first exercising reasonable diligence, we conclude that the published notice was statutorily defective. *See* § 45-3-403(B) (providing that notice may be given by publication to all such "unknown persons and to all known persons whose addresses are unknown who have any interest in the matters being litigated" and Section 45-1-401 "if the address or identity of any person is not known and cannot be ascertained with reasonable diligence[.]").

**{37}**     Griffin argues that the Welches were unknown to him, that he was justified in assuming that any will of Marie's had been either revoked or lost, and accordingly did not need to serve the Welches by means other than publication. We first address Griffin's argument that he was entitled to rely on a presumption that any will of Marie's had been lost or revoked. "[T]he party claiming revocation has the burden of establishing that fact[.]" *In re Estate of Kerr*, 1996-NMCA-063, ¶ 14, 121 N.M. 854, 918 P.2d 1354. A presumption that a will has been revoked or lost may arise when "a will is

traced to the testator's possession and cannot be found after death[.]" Restatement (Third) of Prop.: Wills & Donative Transfers § 4.1 cmt. j, (Tentative Draft No. 2 March 16, 1998); *Perschbacher v. Moseley*, 1965-NMSC-068, ¶ 4, 75 N.M. 252, 403 P.2d 693 ("It will be presumed that the instrument was destroyed by the testator with the intention of revoking it if the proponent fails to give an explanation for the absence of a will which was in the testator's possession or in a place to which he had ready access.").

**{38}** On the record before us, Griffin failed to establish the necessary factual predicate to invoke the presumption. Griffin contends that "[h]e investigated and could not locate [the] will . . . had no reason to believe anyone other than Alderman had a will [belonging to Marie], and [that] he unsuccessfully hired a private investigator to find Alderman." Griffin admits that he did not locate Alderman or the wills, and accordingly, Griffin never traced either the 1976 Will or the 1980 Will to "the testator's possession." Restatement (Third) of Prop.: Wills & Donative Transfers § 4.1 cmt. j. For this reason, the presumption is inapplicable. In addition, while we agree that a presumption may be relied upon in certain circumstances, a mere presumption does not excuse the independent duty to exercise due diligence in good faith to identify potential interested parties. *See T.H. McElvain*, 2017-NMSC-004, ¶¶ 24-31 (analyzing reasonable diligence with respect to adequate notice as a threshold question antecedent to determination that notice was proper, and that a judgment was valid and immune to collateral attack).

**{39}** We now address Griffin's argument that the Welches were unknown persons entitled to notice only by publication. While we agree that the Welches were unknown persons vis-à-vis Griffin when he filed the 2007 Heirship Proceeding, Griffin nevertheless had an obligation to exercise reasonable diligence in an attempt to ascertain their identities and whereabouts based upon facts known to him at the time he filed the proceeding. *See id.*

**{40}** We acknowledge that what constitutes due diligence may differ depending on the individual circumstances of each case. *See id.* ¶ 37 (holding that due diligence must be evaluated in light of the facts, circumstances, and resources available). In this case, any attempts to locate the 1980 Will and interested persons were indisputably hindered by Alderman's attempts to hide from his creditors, by the fact that Griffin was unaware that the Welches were devisees, and by the fact that the last will of which Griffin was aware was the 1976 Will. Nevertheless, given Griffin's knowledge that a will had once existed, he was required to take at least some steps to locate it, and to locate and provide notice to its devisees in connection with the petition he filed in the 2007 Heirship Proceeding. *See* §§ 45-1-401(A) and 45-3-403(A) (requiring the exercise of due diligence to ascertain the address and identities of unknown persons "[u]pon *commencement of* a formal testacy proceeding[.]" (emphasis added)).

**{41}** We need not decide what actions Griffin needed to take in order to satisfy the requirement of reasonable diligence, other than to state that a complete absence of action in connection with the 2007 Heirship Proceeding, when coupled with Griffin's failure to notify the court of his knowledge that a will had once existed and had once

been in the possession of Alderman, fails to satisfy due diligence requirements.[4] Griffin did conduct a thorough search for both Alderman and the 1976 Will in 1988 and 1989, but those efforts occurred more than seventeen years before he initiated the 2007 Heirship Proceeding, and were stale because they were temporally separated from, and bore no connection to, Griffin's filing of his petition in the 2007 Heirship Proceeding. In addition, Griffin made no mention of his previous efforts in his petition, nor did he alert the district court that a valid will and devisees might exist. For these reasons, we hold that Griffin failed to exercise reasonable diligence as required by the probate code and due process.

{42}    Given our holding, we need not address the Welches' argument that the published notice itself was defective pursuant to *Kalosha v. Novick*, 1973-NMSC-010, 84 N.M. 502, 505 P.2d 845, nor need we address whether the provisions of Rule 1-004 NMRA apply to probate proceedings.

## C.    The 2007 Heirship Proceeding Is Subject to Collateral Attack

{43}    We acknowledge that "[t]he law is settled in New Mexico that . . . judgments cannot be questioned when attacked collaterally, unless lack of jurisdiction appears affirmatively on the face of the judgment or in the judgment roll or record, or is made to appear in some other permissible manner." *In re Estate of Baca*, 1980-NMSC-135, ¶ 11. In this case, Griffin's failure to exercise reasonable diligence renders the judgment void for lack of jurisdiction. *See Ortiz v. Shaw*, 2008-NMCA-136, ¶ 17, 145 N.M. 58, 193 P.3d 605 (stating that "[p]roper service of process is required before a court can exercise jurisdiction over a [party]"); *State ex rel. Office of Att'y Gen. v. Grand River Enters. Six Nations, Ltd.*, 2014-NMCA-073, ¶ 6, 329 P.3d 723 ("[A] judgment entered against a party over whom the court lacks personal jurisdiction is a void judgment."). "A judgment which is void is subject to direct or collateral attack at any time." *In re Estate of Baca*, 1980-NMSC-135, ¶¶ 10-12 (upholding collateral attack on a 1950 judgment in an estate proceeding). For the foregoing reasons, we hold that the 2007 Heirship Proceeding is subject to collateral attack, and void as to the Welches.[5]

---

[4]While the Welches have no standing to raise arguments with respect to notice on behalf of Alderman qua Alderman, here, the Welches suffered actual injury as a result of Griffin's failure to provide notice to Alderman—this failure appreciably diminished the chance that the 1980 Will would have been discovered and introduced during the course of the 2007 Heirship Proceeding. *See United States v. Windsor*, 570 U.S. 744, 757 (2013) (requiring a plaintiff to suffer an injury in fact fairly traceable to the challenged action of the defendant).

[5]We note that our holding reversing summary judgment in favor of Griffin with respect to the validity of the 2007 Heirship Proceeding operates as the equivalent of granting summary judgment in favor of the Welches. "Where cross-motions for summary judgment are presented on the basis of a common legal issue, this Court may reverse both the grant of one party's motion and the denial of the opposing party's cross-motion and award judgment on the cross-motion." *Grisham v. Allstate Ins. Co.*, 1999-NMCA-153, ¶ 2, 128 N.M. 340, 992 P.2d 891. We are cognizant that a party moving for summary judgment must meet its initial burden of establishing a prima facie case for summary judgment. *See Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. Once a moving party meets that initial burden, the burden shifts to the nonmoving party to alternatively establish evidence that issues of material fact remain requiring a trial on the merits. *See Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713,

## D. Statutes of Limitation Under the Probate Code

**{44}** We turn now to the arguments made by Premier and Griffin alleging that statutes of limitation contained in the probate code bar the 1980 Will from probate. Below, the Welches sought a ruling from the district court construing the 1980 Will, but the district court found that "[NMSA 1978, Section 45-3-102 [(2005)] and [Section] 45-3-108 provide for a conclusive presumption of intestacy if the will is not probated within [three] years of the testator's death[,]" and thus, the 1980 Will was barred from probate. We need not decide whether the district court was correct, because we address the Welches' alternative argument; that the three-year limitations statute does not bar the Welches' present attempts to probate the 1980 Will because an exception to the three-year bar applies. With respect to this issue, the district court, relying on NMSA 1978, Section 45-1-110(D) (2011) ruled that any right to probate the 1980 Will or prove title through its devise was extinguished in 1991, three years after Marie's death, and held that the subsequent amendments to Section 45-3-108, which codified the exceptions which the Welches advanced below, did not revive that right. We disagree.

**{45}** Section 45-1-110(D) provides in relevant part, "If a right is acquired, extinguished or barred upon the expiration of a prescribed period of time that has commenced to run by the provisions of any statute before the effective date, the provisions shall remain in force with respect to that right[.]" Because the exceptions the Welches rely upon did not exist under the statute in effect, Section 45-3-108 (1975), when Marie died, the district court found that the Welches were barred from seeking to probate the 1980 Will under the exceptions. We disagree. A closer look at the history of the probate code indicates that the right to prove title through devise was continuously maintained between 1988 (when Marie died) and the present.

> In 1988, when Marie died, Section 45-3-102 (1975) provided:
>
> Except as provided in [NMSA 1978, 45-3-1201 (1975, amended 2011)], to be effective to prove the transfer of any property or to nominate a personal representative, a will must be declared to be valid by an order of informal probate by the probate court, or an adjudication of probate by the district court. *However, a duly executed and unrevoked will which has not been probated may be admitted as evidence of a devise if no court proceeding concerning the succession or administration of the estate has occurred, and either the devisee or his successors and assigns possessed the property devised in accordance with the provisions of the will, or the property devised was not possessed or claimed by anyone by virtue of the decedent's title during the time period for testacy proceedings.*

*Id.* (emphasis added). In 1993, our Legislature adopted Subsection 45-3-108(A)(4) (allowing testacy proceedings to be commenced if no proceedings concerning the succession or estate administration occurred within three years of the decedent's

---

242 P.3d 280. We hold that the Welches have met their burden and that Griffin has not established that issues of material fact preclude a grant of summary judgment in favor of the Welches.

death). *See* 1993 N.M. Laws, ch. 174, § 68. Finally, in 1995, our Legislature adopted Subsection 45-3-108(A)(5) (allowing testacy proceedings to be commenced more than three years after the death of the decedent for the purpose of establishing an instrument to direct or control ownership of property distributable under the terms of the decedent's will from one other than the decedent), and removed all of the above italicized language from Section 45-3-102. *See* 1995 N.M. Laws, ch. 210, §§ 31, 33.

{46}   Because the right to confirm title to property through devise so long as no valid prior proceeding had been commenced within three years of the decedents' death existed continuously between 1988 and the present, the district court erred in concluding that such a right was extinguished or barred in accordance with Section 45-1-110(D).[6]

{47}   We need not address the arguments of the parties with respect to other sections of the probate code because we conclude that the Welches may introduce the 1980 Will in this proceeding pursuant to Subsection 45-3-108(A)(4) which provides:

> an informal appointment in an intestate proceeding or a formal testacy or appointment proceeding may be commenced . . . if no proceedings concerning the succession or estate administration has occurred within the three-year period after the decedent's death, but the personal representative has no right to possess estate assets . . . beyond that necessary to confirm title thereto in the successors to the estate[.]

*Id.* The Welches argue that, because no probate or intestacy proceeding was commenced within the first three years after Marie's death in 1988, the Welches are not barred from probating the 1980 Will to prove their title to the Minerals. Premier points out that the plain language of Subsection (4) of Section 45-3-108 restricts the personal representative's right to possess estate assets to the possession necessary to confirm title to the assets in the estate's successors. We agree that pursuant to this exception, a will may be introduced to confirm title, but not to strip title from one who already possesses it. *See In re Estate of Yogiji*, 2013-NMCA-104, ¶ 24, 311 P.3d 1224 ("[T]he Legislature intended to preclude the personal representative from selling or otherwise exerting possessory control over assets that had been in the possession of others for more than three years. However, the Legislature wanted to provide a mechanism for a personal representative to confirm title in an estate's successors for purposes of establishing the validity of title."). Similarly, the exceptions to Section 45-3-108 are not intended to permit challenges to valid heirship determinations. *See In re Estates of Hayes*, 1998-NMCA-136, ¶ 23, 125 N.M. 820, 965 P.2d 939 ("'[P]ublic policy requires

---

[6]Section 45-1-110(B) provides "the [Uniform Probate C]ode [(the Code)] or the amendment applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of [the probate code] or the amendment[.]" The record does not contain any finding from the district court indicating that the interest of justice or infeasibility require application of the prior version of Section 45-3-108, and we are aware of no reason justifying such an application. Accordingly, the district court erred in applying the prior version of the probate code as opposed to the current version.

that there be an end to litigation and that rights once established by a final judgment shall not again be litigated in any subsequent proceeding.'" (quoting *Miller v. Miller*, 1971-NMSC-104, ¶ 13, 83 N.M. 230, 490 P.2d 672)); *see also* Unif. Prob. Code § 3-410 (amended 2019) ("Except as otherwise provided in [Unif. Prob. Code § 3-412 (amended 2019)], an order in a formal testacy proceeding serves to end the time within which it is possible to probate after-discovered wills or to give effect to late-discovered facts concerning heirship. Determination of heirs is not barred by the three-year limitation, but a judicial determination of heirs is conclusive unless the order may be vacated.").

{48} Nevertheless, we have declared the 2007 Heirship Proceeding void, and the final decree issued therein awarding title to the Minerals to Griffin is of no effect. It is as if the 2007 Heirship Proceeding was never filed. Accordingly, the Welches current efforts to probate the 1980 Will do not strip title from anyone whose title interest was previously confirmed through a probate proceeding. Instead, this present proceeding seeks to confirm title in the Welches pursuant to the terms of the 1980 Will. Allowing such a proceeding in the narrow circumstance when no valid previous determinations regarding successors to the estate have been made, does not eviscerate the three-year statutory bar. Instead, it advances an important aim of our probate code—"to discover and make effective the intent of a decedent in distribution of the decedent's property[.]" Section 45-1-102(B)(2). For this reason, we hold that the Welches may probate the 1980 Will in this proceeding.

## III. Bona Fide Purchaser

{49} Despite our holding above, this Court recognizes the importance of protecting the interests of third parties who have acquired title to property in the absence of a timely testacy proceeding. *See In re Estate of Yogiji*, 2013-NMCA-104, ¶ 24. We are of the view that the narrow exceptions to the three-year statute of limitations barring late-filed petitions for probate evince an intent to protect innocent purchasers, while simultaneously making final, all determinations with respect to distribution of estates not contrary to law and settled expectations. These important policy considerations are mirrored in the protections afforded to bona fide purchasers for value without notice. To qualify as a bona fide purchaser, a party must show that it acquired property for valuable consideration in good faith without notice of defects in the chain of title to the property, including adverse rights or claims of other parties. *See Jeffers v. Doel*, 1982-NMSC-116, ¶ 7, 99 N.M. 351, 658 P.2d 426; *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 26, 150 N.M. 428, 260 P.3d 414 ("A good faith purchaser of real property who has invested money in the property without notice of a third party's unrecorded interest in that property is protected under New Mexico law."). " 'The general rule is that a prospective purchaser of real property is deemed to have notice of adverse claims to that property if the purchaser has 'knowledge of such facts as ought to put a prudent person upon inquiry as to the title.' " *Id.* (alterations omitted) (quoting *Hunt v. Ellis*, 1921-NMSC-083, ¶ 8, 27 N.M. 397, 201 P. 1064). "Once a prospective purchaser obtains knowledge of facts that trigger a duty to inquire about the title, that purchaser must perform a 'reasonably diligent investigation'—one that 'would lead to

the knowledge of the requisite facts by the exercise of ordinary diligence and understanding.' " *Id*.

**{50}**   Premier contends that it had neither actual, constructive, or inquiry notice regarding defects in the chain of title of the Minerals awarded to Griffin following the 2007 Heirship Proceeding, and which Premier subsequently purchased. Following the 2007 Heirship Proceeding, Griffin transferred the Minerals to Griffin Minerals, LLC, which subsequently leased them to Sam L. Shackelford. Premier hired an attorney to provide a title opinion with respect to the Minerals in 2010, purchased the leasehold in 2010, and subsequently acquired fee interests in the Minerals.

**{51}**   The Welches argue that the title opinion put Premier on notice that title defects existed with respect to the Minerals. The title opinion indicates that the interests were derived pursuant to the 2007 Heirship Proceeding which found that Griffin "was the only heir at law of Marie Griffin Welch, who died intestate on December 27, 1988." The title opinion goes on to comment that "the finding appears to be somewhat cursory as to Ralph S. Griffin's great-grandparents to the generational level of Marie Griffin Welch. However, notices of the proceedings were published pursuant to New Mexico law, and no other parties filed claims or appeared to object to the proposed findings of the [c]ourt." Finally, the opinion concludes, "[b]arring a showing of fraud or a violation of procedural due process, the determination as tendered by the [c]ourt will prevail." As part of the title review, an examination was conducted of all instruments affecting the Minerals listed in the "tract indexes and files of Currier Abstract Company, Artesia, New Mexico[.]" Among the documents examined was the 1974 Will, the 1975 Proceeding, and the 1975 Mineral Deed Marie executed, assigning herself the Mineral interests following Herbert's death. The Welches contend that these documents, along with the title opinion's cautionary language regarding the 2007 Heirship Proceeding's validity, put Premier on notice of title defects such that they cannot claim bona fide purchaser status. The Welches also contend that Premier should have examined the 1974 Will and concluded that Marie could not have died intestate. We disagree.

**{52}**   The existence of the 1974 Will and the cautionary language in the title opinion do not put Premier on actual or constructive notice of title defects. Assuming arguendo that Premier had an obligation to review the 1974 Will and 1975 Proceeding, Premier could have reasonably relied upon the 1975 Proceeding's findings that Marie was the sole beneficiary, heir, devisee, legatee, and interested party with respect to Herbert's estate, and ordering all of Herbert's property distributed to Marie. This is particularly true given that no person has ever filed a direct challenge to the validity of the 1975 Proceeding. Similarly, Premier justifiably relied upon the findings of the 2007 Heirship Proceeding concluding that Marie died intestate, that Griffin was her sole heir, and awarding title to the Minerals to Griffin as his sole and separate property. Again, no person has ever filed a direct challenge to the validity of the 2007 Heirship Proceeding, so even a diligent investigation would not have put Premier on notice of defects in Griffin's title. *See City of Rio Rancho*, 2011-NMSC-037, ¶ 26 (stating that where there is a duty to inquire, the prospective purchaser is charged with knowledge of all facts that a reasonably diligent investigation would have ascertained).

**{53}** We are cognizant of the apparent incongruity between our decision to declare the 2007 Heirship Proceeding void, and our decision declaring that Premier had no notice of title defects in the Minerals that Griffin derived therefrom. Indeed, our holding, although ultimately based upon statutory requirements, touches on the type of defect the title opinion warned about—a violation of procedural due process. Nevertheless, we do not believe that Premier had "knowledge of such facts as ought to put a prudent person upon inquiry as to the title." *Id.* ¶ 26 (alteration, internal quotation marks, and citation omitted). We declared the 2007 Heirship Proceeding void based upon Griffin's knowledge that Marie had once had a valid will, and his knowledge that Alderman possessed the same. Griffin's knowledge is crucial in that it supports our finding that he failed to exercise reasonable diligence before resorting to publication. In contrast, Premier was unaware of the existence of any of Marie's wills and, given that no person had ever contested the 2007 Heirship Proceeding, was justified in relying upon the finality of the decree entered therein. To rob Premier of its bona fide purchaser status would be inequitable given Premier's innocence. Thus, we affirm the district court's conclusion that Premier was a bona fide purchaser.

**CONCLUSION**

**{54}** For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Griffin, we affirm the court's decision granting summary judgment in favor of Premier with respect to its status as a bona fide purchaser, grant summary judgment in favor of the Welches with respect to their claim that the 2007 Heirship Proceeding is void and subject to collateral attack, and we remand in accordance with the holdings expressed in this opinion.

**{55}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge, (concurs in result only).**